(Superior Court of Cincinnati.)
January, 1899.

THE CITY OF CINCINNATI v. THE CINCINNATI STREET RAILWAY COMPANY.

(1). Where the proper municipal board declares by ordinance the terms and conditions upon which the owners of street railway routes may operate over the streets of the city, and the provisions of the ordinance are duly accepted in writing by a street railway company, such ordinance and the acceptance thereof constitute a contract between the parties. When the provisions of such ordinance are plain and unambiguous, there is no room for a practical construction of the contract by conduct of the parties. Especially has the rule of practical construction no application when the acts or conduct are not those of the parties who made the contract, but are the acts or conduct of other boards and of subsequent officers and agents of the municipality.

(2). Statements rendered by the street railway company to the city showing the amounts due the city for operating under an ordinance and payments made thereon do not constitute an accord and satisfaction between the parties where there has been no dispute as to the amounts due, and no separate agreement entered into by which the city agreed to take less than the amounts due under the ordinance, and where the sums due were not unliquidated in character, but were capable of arithmetical calculation.

(3). Where the municipal ordinance under which a street railway company is operating provides that the company "shall pay annually on the 1st of January, in advance, for and upon each car run the sum of $4.00 per lineal foot of every

such car, inside measurement, and such payment shall be a condition precedent to the right to operate the road," statements rendered and payments made pursuant thereto do not constitute accounts stated and settled, but only a payment on account, since it is impossible to determine in advance the exact amount due the city for the succeeding year. The rule of account stated and settled applies only where the parties have settled their accounts upon full view of all the transactions, and has no application where the means of information are peculiarly, if not wholly, within the possession of the party rendering the account.

———

JACKSON, J.

The plaintiff in its petition filed herein on March 30th, 1892, seeks to recover from the defendant, the Cincinnati Street Railway Company, certain sums claimed to be due as arrears upon payments to the city from ·the company, for car licenses from January 1st, 1881, up to and including the year, 1892, and also certain sums claimed to be due as arrears upon payments to the city by the company upon two and a half percentage of the gross earnings of the defendant company, from January 1st, 1883, up to and including the year 1892, amounting in all to the sum of $105,001.70, with interest upon the amounts from the dates on which they respectively became due.

The claim of the plaintiff is based upon the operation by the defendant of its several lines or routes of street railway over the streets of the city, under and pursuant to an ordinance of the common council of this city, passed February 7th, 1879, the 11th section of which is as follows:

"The owner of each street railroad shall pay into the city treasury at the time of acceptance, and annually thereafter, on the first day of January, in advance, for and upon each car run by him, the sum of four dollars per lineal foot of every such car, inside measurement, and such payment shall be a condition precedent to the right to operate the road, and if not paid within ten days after due, the mayor shall have the right summarily to stop the running of the cars, and in the event of such stoppage no liability for damage shall accrue.

And in addition thereto, any person or company accepting hereunder shall pay, under the same condition and subject to the same penalty into the city treasury, quarterly, on the 1st day of January, April, July and October of each year, two and one-half percent. of the gross earnings from every source of such company during the preceding quarter, to be applied to the cleaning and repairing of the streets wherein the tracks of such company exist, and the board of public works or common council shall at any time have the right of access to the books of the company by any agent they may designate for that purpose in order to ascertain the amount of such gross earnings".

It is alleged and admitted that the defendant duly accepted in writing the provisions of this ordinance, and that it has during all the time stated, been operating its cars under and pursuant to said ordinance over a part of the routes described in the petition. It is also admitted that in its operation of three of the routes named, the defendant is not governed by the ordinance of February 7th, 1879; it having acquired the right by consolidation to operate these routes under pre-existing ordinances. Therefore the amounts claimed for car licenses and gross earnings from the three routes in question are not recoverable, and are eliminated from consideration herein.

The right to recover as to cars operated upon the remaining routes is predicated upon the plaintiff's claim that the defendant was compelled to pay for the operation of its cars under the ordinance in question, by way of car license, four dollars per lineal foot, inside measurement, on the whole number of cars actually operated and also two and one-half per cent. of the gross earnings of the company from every source, during the period in question, and that the defendant having failed to pay the licenses required on the whole number of cars actually operated, and having paid only upon an average number of cars operated for eighteen hours, per day, and three hundred and sixty-five days in the

year; and that having paid the percentage not upon the gross earnings from every source, but only on the gross earnings from passenger fares, that therefore, the city is entitled to recover the difference arising from its methods, and the city's methods of ascertaining the amounts due under the ordinance.

As to the percentage due upon gross earnings, it is admitted by the defendant that it paid only upon the gross earnings from passenger fares, and that from 1883 up to and including the year 1892, it was deriving an additional revenue from advertisements in its cars.

As to the car license fees it is admitted by the defendant that it did not at any time, within the period aforesaid, pay upon the number of lineal feet inside measurement, of the whole number of cars actually operated, but that in arriving at the amount due the city for car licenses pursuant to the provisions of the ordinance, it adopted a method which is best described in the language of the secretary of the company as follows: "We take the actual number of cars, and add the length of those cars together, and divide it by the total number, giving the average length per car. Now, to arrive at the number of cars in operation, we take the number of trips made, the total number of trips made during the day, and multiply that by the length of time it took to make a single trip; that would produce in minutes a day's work of trips. To reduce that to cars we divide it by 1080 during the period when 18 hours was the day's work, because 18 hours multiplied by 60 makes 1080 minutes; divide the total number of minutes consumed by trips in a day by 1080, a day's work, produce the number of cars for that day, the total number of cars for one day—for a month, being each day added together and divided by 30 or 31, as the case may be, produced an average for that month, and twelve months in the year added together and divided by twelve produced the average per annum."

In other words, the company's method was predicated upon its claim that it was not compelled to pay the full amount of four dollars per lineal foot, inside measurement, upon every car run, unless that car was operated eighteen hours per day, and three hundred and sixty-five days in the year, and that, if cars were for any reason operated less hours in a day, or a less number of days in the year, it was compelled to pay only a proportionate amount of four dollars upon every lineal foot, inside measurement, of such cars so operated; so that, if any car or cars operated but eight hours per day for three hundred and sixty-five days, in the year, the result would be that the company paid, not four dollars, but two dollars per lineal foot, inside measurement of such cars, and so, if any cars or car were operated for any number of hours less than eighteen per day, or any number of days less than three hundred and sixty-five in the year, the same method was adopted in arriving at the proper proportion of the four dollars, per lineal foot on the cars actually operated.

The plaintiff has failed to make proof in this case of the actual number of cars operated. This is due to the fact that it had no officers or agents to take account of the actual number of cars during such times, and also to the fact that the company kept no books showing the actual number of cars it had in operation, but, that it kept the number of trips made by the different cars upon loose sheets of paper, which were not carried into any books, but which were destroyed at the end of the year, after it had ascertained the results desired by its methods hereinbefore described. The city has, however, through an account ascertained the highest monthly average of cars operated. estimated upon the defendant's method, during each of the years in question; and the statement furnished, (and which is admitted by defendant to be correct) shows that the highest monthly average is in excess of the years average for the year 1881, in the sum of $700; for the year 1883, in the sum of $314.28; for the year 1884, $886.16; for the year 1885, $12.20; for

the year 1886, $1768.64; for the year 1888, $2439.46; for the year 1891, $884.28, and for the year 1892, $331.12.

The plaintiff claims that for the purpose of this case it is entitled to recover for car licenses, the differences between the highest monthly averages and the yearly averages, with interest on the several amounts from the dates upon which they became due and payable.

It must be conceded that if the plaintiff's claim, based upon its construction of the ordinance, is well founded, under all the circumstances of this case, it can recover the difference between such yearly and monthly averages, instead of recovering for the actual number of cars operated; but defendant denies the right to any recovery herein upon four grounds:

First: It is claimed that its methods of computation was based upon a fair and proper construction of the ordinances of February 7th, 1879.

Second: that if this be not so, still the parties to the contract embodied in the ordinance, and the acceptance thereof by the defendant, have by their acts, given to the same a practical construction in conformity with its claim herein.

Third: That there has been an accord and satisfaction of the amounts claimed to be due the city, and,

Fourth: That there has been an account stated and settled between the parties as to each yearly and quarterly claim.

As to the percentage of two and one-half per cent. on gross earnings, it is conceded by the defendant that the general term, in the case of the City of Cincinnati v. The Mt. Auburn Cable Railway Company, 28 W. L. B., 276, construed a similar ordinance favorable to the claim of the plaintiff herein, but it denies the application of the Mt. Auburn case to the case at bar in respect to the claim for recovery upon car license fees.

In the absence of the question of practical construction given to the ordinance by the conduct of the parties, we think it is clear, that the construction contended for by defendant, with reference to car license fees can not be maintained. We think this question was fully considered and determined in the case of Cincinnati v. The Mt. Auburn Cable Railway, 28 W. L. B., 283, where the court had under consideration the construction of the ordinance of September 3rd, 1886, in all respects the same as the ordinance in question. The court there, construing that ordinance with reference to car license fees said:

"If the ordinance had intended that the license fee should be graded as the plaintiff contends, we should certainly have found prescribed in the ordinance a standard number of hours for a day, and a standard number of days for a year, whereas, on the contrary it says, that for and upon each lineal foot operated upon the road, a certain payment shall be made * * * . Our construction of this provision of the ordinance is, that the payment of the license fee is a condition precedent which is required of the company to enable it to secure the privilege of running upon the streets of the city the number of lineal feet of cars thus paid for; that the company is not compelled to run the same cars at all times, but may change a will the particular car or cars run; provided there is not operated on the road more lineal feet of car than is paid for on the 1st of January preceding; and that, if the company, having paid in advance the license for a certain number of lineal feet, fails to exercise its privilege, it must bear the loss, and the city is not concerned with it; and if the road puts in operation during the year more lineal feet of cars than it had paid for on the 1st of January, it must pay to the city for this purpose at the rate of four dollars per lineal foot, for such extra feet so operated. This construction is in harmony too with the policy of the city in reference to other licenses (See Russell License Law, 2672, Revised Statutes), and is the only one that is definite, practical and fair to all concerned."

But, conceding this to be the fair construction of the ordinance, defendant claims that the sole question before the court in the Mt. Auburn case,

was the construction of said ordinance, and that the court in that case, did not have before it the question presented in this case, as to a practical construction by the parties thereto or of accord and satisfaction, or of accounts stated and settled.

It must be conceded that the questions involved in this case, in these respects, were not presented to the court in the Mt. Auburn case, and that the facts in this case, therefore, raise additional questions for consideration. Therefore, we are lead to consider these questions, and first, as to the practical construction given by the parties to the contract.

The facts relied upon to establish this defense are very largely those relied upon to establish the other defenses of accord and satisfaction and account stated and settled, and therefore, at the outset, a brief statement of all the facts relied upon for these defenses is essential. They are as follows: Prior to the ordinance of February 7th, 1879, there existed an ordinance for the operation of street railways, similar to the one in question. Pursuant to that ordinance several lines of street railway have been operated, and payments were made to the city on the basis of the method adopted by the defendant in this case. The defendant company succeeded by consolidation, to the rights and privileges of the companies operating prior to that date. For some time prior to the passage of the ordinance of February 7th, 1879, the Consolidated Street Railway Company, the predecessor of the defendant, began negotiations with the board of public works, of this city, the result of which, was the passage of the ordinance in question. During the progress of the negotiation, Mr. Gove, the secretary of the Consolidated Street Railway Company, frequently stated to the board of public works, that the company desired an ordinance which would enable it to pay the car license fees upon the average method hereinbefore described. From other evidence in the case it would seem that the board of public works was not adverse to granting an ordinance which would confer such rights. Accordingly, the board of public works recommended to the common council of the city, and the common council duly passed the ordinance of February 7th, 1879, which was duly approved by the board of public works. It was at that time the province of the board of public works to recommend to the common council, and to approve all ordinances passed by the common council. The defendant accepted in writing, the provisions of the ordinance, and in January, 1880, Mr. Gove, the then secretary of the company, appeared before the board of public works, and presented to it a statement for a year in advance, and up to January 1st, 1881, showing the amounts due to the city for car licenses, based upon its average method of calculating the number of lineal feet of the cars operated by the company. At the same time Mr. Gove presented to the board of public works, a check, covering the amount due the city, as shown by its statement, and he fully explained to the board the company's method of computation, and the statement and check were accepted by the board without dissent; but there is no evidence to show that the defendant's method was by any one explained to the common council, which passed the ordinance, or that the common council ever expressly assented to the method adopted by the company. After the first payment made by Mr. Gove to the board of public works there were no further explanations between the officers of the city, and the officers of the street railway company in reference to this question, but the company during all the times in question, regularly presented, some times to the mayor, some times to the auditor, some times to the comptroller, and some times to the city treasurer, its annual statements in advance, showing upon their face that the company was not paying upon the actual number of cars operated, but upon the average number of cars so operated, and further presented quarterly statements, showing the amount of gross earnings, from which,

however, the earnings from advertisements were uniformly omitted. These statements were accompanied by checks, which were uniformly accepted by the officers of the city, and receipts given. In some instances the receipts were in full, and in other instances there was simply the receipt of the officer of the city. It is conceded that the payments were regularly made to the proper officers of the city authorized to receive such payments and that the moneys received were regularly passed to the proper city accounts. The evidence further shows, that the proper city officer regularly reported to the common council the amounts received by it for car license, but these amounts were, some times, included in a general statement of amounts received by the city for general license purposes. The evidence fails to show that the average method adopted by the company was ever directly brought to the notice of the common council, which passed the ordinance in question. From the evidence, it is apparent there never was a dispute between the city and the street railway company as to any amounts due the city for percentage on gross earnings and car license fees, and that there never was any new agreement entered into between the parties based upon any consideration for the acceptance of any sums other than those due the city pursuant to the ordinance in question. As stated, the officers of the city uniformly accepted the statements, and the checks covering the amounts shown thereby, and passed the amount so received to the proper fund. From the statements furnished by the company, showing the amount due for car license, it appears that the company, on one occasion at least, deducted from its statement, showing the amount due for the succeeding year, an amount which was claimed by the company to have been paid in excess of the amount required upon the average number of cars operated for the preceding year, and that on one occasion, at least, it added to such statement for the succeeding year, an amount for the previous year, in addition to that contained in the statement for said previous year.

Since the hearing of the case, plaintiff, pursuant to an agreement, has endeavored to offer in evidence a letter written by the corporation counsel on March 10th, 1888, to the city comptroller for the purpose of showing the construction of the ordinance in question insisted upon by the city at that time. But as no notice of this letter can be charged to the city, the letter is wholly incompetent as evidence, and is not considered by the court.

Does this state of facts constitute either a practical construction of the contract by the conduct of the parties, or an accord and satisfaction, or accounts stated and settled, either one of which would preclude the city from recovering herein. And, first, as to practical construction.

It is a well established rule of law that in contracts between private parties, the practical construction placed upon the contract in the performance thereof by the parties who made it, should, in case of doubt, have great weight, in its construction by courts; but it has frequently been held that: "Where the meaning of the instrument is clear in the eyes of the law, error of the parties can not control its effect." See Railroad Company v. Trimble 10 Wallace, 377, Pollock on Contracts, Wald's edition, 404, Bishop on Contracts, section 412.

The same doctrine was clearly laid down by the supreme court of this state in the case of Cincinnati v. the Gas Light and Coke Company, 53 Ohio St., 286, where the court said:

"It is not every captious doubt as to the meaning of a written instrument that will warrant a court in concluding that an instrument is ambiguous, and therefore disregard its words and seek the intention of the parties from the course of business growing out of an attempted performance. The most exact and skillfully drawn document may, by able counsel, be so construed as to create what would seem to be a reasonable doubt, when, in fact, it is perfectly clear to the parties, and except for the strained construction of counsel, also to the court. In such cases, it is the duty of courts to

disregard the strained construction of counsel, and to enforce the instrument according to the reasonable, plain and manifest intention of the parties. Business does not usually deal in fine drawn distinctions, but in plain, practical transactions."

Applying this principle to the meaning of the ordinance in question, as we clearly understand it, and as it has been construed by the general term in the Mr. Auburn case, we think there is no room for practical construction in this case. It is true, in the Mt. Auburn case there was no question of practical construction, and the court did not, therefore, necessarily hold that the ordinance there, which was the same as the ordinance here, was entirely free from doubt; but it is fair to infer, from the language of the court in the Mt. Auburn case, that it was free from any doubt whatsoever as to the proper construction of the ordinance of that case. There the court said:

"If the ordinance had intended that the license fees should be graded, as plaintiff contends, we should certainly have found prescribed in the ordinance a standard number of hours for a day, and a standard number of days for a year, whereas on the contrary it says, that for and upon each lineal foot operated upon the road, a certain payment shall be made." And further "this construction is in harmony too with the policy of the city in reference to other licenses (see Russell License Laws, sec. 2672, Revised Statutes) and is the only one that is definite, practical and fair to all concerned."

So in this case, we think the construction of the ordinance in question contended for by the city "is the only one that is definite, practical and fair to all concerned"; that the meaning is so manifest and unambiguous as not to be the subject for construction by the conduct of the parties. But there is an additional reason for so holding in the present case, for it will be seen that the ordinance in question applies not only to the defendant company, but to the "owner of each street railroad", which shall accept the terms of said ordinance. If certain officers of the city could, by their course of conduct with the defendant in this case, give to such ordinance a practical construction, binding upon the parties thereto, then a subsequent officers might give to other owners of street railroads accepting the provisions of said ordinance, another and a different interpretation or construction, and thus, we would have that inequality under the operation of the same ordinance, which could not be recognized in law.

Again, we think that the only city authority who could possibly be authorized or empowered to give to the ordinance in question a practical construction, would be that authority which enacted the ordinance. The common council of the city of Cincinnati adopted the ordinance in question. It was not adopted by the board of public works, although recommended and approved by said board. Therefore, we think that board, acting independently, as the evidence shows, of the common council, was not authorized to give to the ordinance the construction claimed for by the defendant, even if it admitted that the facts shown would otherwise be sufficient for that purpose. Neither could the auditor by his conduct preclude the rights of the city by giving to the ordinance the construction claimed for by the defendant, for while it may be admitted, as contended for by the defendant that the word "audit" plainly means "a judicial investigation and decision as to the merits of a claim", nevertheless it can not be contended that a subsequent board, or a subsequent officer, is authorized to give a practical construction to an ordinance. This is directly held in the case of Cincinnati v. Gas Light & Coke Company, supra, where the court said:

"But the reason of the rule (practical construction) ceases when the acts or conduct of the parties are not those of the parties who made the contract, and are not presumed to know, in their own minds, what was in fact meant by the words used. The acts and conduct of the parties fol-

lowing after the parties who made the contract, must in the nature of the case, be only their own construction of the words used, and not the acting out of the understanding of the words by the parties who used them. The same is true of public officers. They may put their own construction upon the words used, but in so doing, they are not acting out of mental understanding of the sense in which the words were used by those who made the contract or written instrument".

From the above language of the supreme court of this state, we perceive another reason against defendant's claim of practical construction, viz: that such is not within the power of public officers.

The same doctrine has been announced in the case of National Waterworks v. School District No. 7, 47 Federal Reporter, 543, where the court says:

"The rule that a court in construing a doubtful provision of a contract will follow the interpretation placed upon it by the parties, does not apply to contracts made by a municipal corporation, in matters affecting the public interests".

The defendant, in support of its contention in this regard, relies strongly upon the case of Kinney, Assignee, v. Commissioners of Hamilton county, 8 C. C., 433, where it is said by that court, that the construction given to a contract by the commissioners of Hamilton county could be considered by the court; but it will be observed, that in the Kinney case, the court did not rest its decision upon the practical construction given by the parties, but proceeded itself to construe the contract, which must be said to have had a very doubtful meaning, and in view of the language of the supreme court in the gas company case, we must assume that the supreme court affirmed the Kinney case upon the construction given to the contract by the court, and not upon the practical construction given to the contract by the parties; but if this be not so, still the Kinney case differs from the case at bar, in that the construction of the contract was given to it by the commissioners who actually made the contract.

Second, neither can the defendant's contention as to accord and satisfaction be maintained, for it is apparent there was no dispute between the parties as to the amount due and no new agreement resting upon any consideration entered into by which the street railway company was to pay any other sums than those expressly called for by the ordinance.

An accord and satisfaction has been defined to be an agreement, "in the case of a contract, where a creditor agreed to accept some other thing in lieu of that which is contracted or promised to be done." Way v. Russell, 33 Federal Reporter, 5.

The mere acceptance of a smaller sum than that which is actually due upon the contract, although it purport to be in full, can not be said to be an accord and satisfaction. This has been held upon the highest authorities, viz: Bunge v. Coop. 48 N. Y., 225; Harriman v. Harriman, 12 Gray, 341; Ryan v. Ward, 48 N. Y., 204.

It must be conceded as contended for by defendant, that an accord and satisfaction may be had by accepting a less sum where the amount due is unliquidated. But, we do not regard the amounts due to the city, under the provisions of this ordinance as unliquidated. On the contrary, we think they were clearly capable of arithmetical calculation, and it has been stated, Smith's Leading Cases, 5th American Edition, volume 1, page 451, that,

"The rule that payment of a smaller sum can not be a satisfaction of a larger debt is applicable only to cases where the larger debt is fixed and liquidated or is ascertainable by merely an arithmetical calculation; it does not follow where the previous claim is unliquidated and unsettled".

Third, the most serious claim on behalf of the defendant is that of account stated and settled. The defendant in support of its claim in this regard relies on the case of Lockwood v. Thorn, 11 N. Y., 170, and in fact, a long unbroken line of decisions sustaining the doctrine therein announc-

ed, that "an account stated, is conclusive upon the parties, unless impeached for fraud or mistake. To make an account stated, it is sufficient that the account has been examined and assented to as correct by both parties. This assent may be express or implied from circumstances.

As a general rule, where an account showing a balance is duly rendered, the one to whcm it is rendered, is bound within a reasonable time to examine the same and object if he dispute its ccrrectness."

This must be said to be the general rule on this subject, but the plaintiff claims that the public officers cf the city have no authority to bind a municipality by way of account stated, and settled, and also, that the matters in dispute in this case were not the proper subject for account stated, inasmuch as the claim of the city is based upon a right cf governmental exaction, and not upon contractual relations between the parties thereto. They further claim, that the matters are not subject for account stated, because of the requirement in the ordinance that payments should be made by the company on the 1st of January, in each year, in advance for the succeeding year, and that inasmuch as the city could not at the time the payments were made, have ascertained and determined the amount of lineal feet upon the number of cars, actually to be run by the company for that year, that it was not in a position to be bound as upon account stated by the statements so rendered by the company in advance.

We do not agree with the plaintiff's claim as to the inability of public officers, to bind the city by way of account stated. We think this question must be held to have been determined in the case of Cincinnati v. Gas Light and Coke Company, 53 Ohio St. supra, where the city was precluded frcm recovering from the gas company amounts paid by its officers to the gas ccmpany in excess of the amount called for by the contract between the parties. If a public officer may bind the city by voluntary payments made in excess of amounts due,

there is no reason on principle why, the city may not be bound by payments received by a public officer in amounts less than the amounts actually due, provided the matter is a proper subject for account stated.

This principle is upheld in the case of St. Louis Gas Light Company v. The City of St. Louis, 11 Mo. Appeals, page 55, where it is said:

"A settlement made by the city auditor with the gas company is, in the absence cf fraud or mistake, conclusive as to amount due by the city at the date of settlement."

The same rule was also laid down in the case of Commissioners v. Commissioners, 75 North Carolina, 240, where it is said:

"Payment voluntarily made with the knowledge of all the facts can not be recovered back, although there was no debt. The rule applies as well to a payment made by one corporation to another as to a payment made by one individual to another."

In that case the rule was made to apply to a board of county commissioners. The same rule was also stated in the Commissioners of Scioto County v. Gherky, Wright's Reports, 494, where the commissioners were precluded from recovering from the county auditor amounts paid by the commissioners to the auditor in excess of the amounts to which the latter was entitled. In that case the court said:

"The parties in this case settled their accounts upon full view of all the transactions. * * * There is no pretense of mistake except in law. v. Every one is chargeable with knowledge of the law, and a mistake as to the law will not open the way to recover money Lack, which in equity should be retained. If anything was wrong in this case, the plaintiffs were particeps criminis. It was as bad faith to pay out the public money against law as for defendant to ask for it of them and receive it."

The underlying principle of the defense of account stated and settled is as, clearly stated by Judge Wright in the case just cited, that the parties "settle their accounts upon a full view

of all the transactions", and in all of the cases cited by counsel sustaining the defense of account stated it appears that at the time the accounts were rendered the parties had opportunities to fully investigate all the facts upon which the accounts were based. The application of this rule to the present case, we think entirely defeats the defendant's claim that there were accounts stated and settled in all the transactions involved in this case, because, in the very nature of things, there could not in the present case, have been a settlement of accounts between the parties "upon a full view of all the transactions."

The ordinance of February 7th, 1879, provides, "That the owner of each street railroad shall pay into the city treasury at the time of acceptance, and annually thereafter, on the first day of January, in advance, for, and upon each car run by him, the sum of four dollars per lineal foot of every such car, inside measurement, and such payment shall be a condition precedent to the right to operate the road," etc.

In the Mt. Auburn case heretofore cited, the court construed this language as follows:

"And that if the company having paid in advance a license for a certain number of lineal feet, fails to exercise its privilege, it must bear the loss, and the city is not concerned with it; and if the road puts in operation during the year more lineal feet of cars than it had paid for on the 1st of January, it must pay to the city for this purpose, at the rate of four dollars per lineal foot, for such extra feet so operated."

If then, in construing this ordinance, we hold, as we must, that the company was bound to pay upon the number of lineal feet of cars, actually run, and that if the actual number of cars run during the year exceeded the number upon which the company paid at the beginning of the year, that it must be held, nevertheless, to pay upon such additional cars; does it not necessarily follow, that under such circumstances, the payment by the company to the city at the beginning of the year, was but a payment on account, anything contained in the statements and receipts to the contrary notwithstanding.

At the time the statements were rendered, each year in advance, it was impossible for the company to then determine the number of cars that the defendant would operate for that year; on the contrary, the company was at liberty at the beginning of the year to pay to the city upon any number of cars at its own discretion, and the city was at that time bound to accept such statement, and receive payment therefor, and it was only after the expiration of the year that the city would be in any proper position to ascertain the amount which was actually due.

Again, we say, it is true as contended for by defendant that the word "audit" plainly means "a judicial investigation and decision as to the merits of a claim;" but certainly there must have been an opportunity for such investigation and decision at the time the auditor received the money, in order to preclude the city by way of account stated. That there was no such opportunity at the time the statements were rendered, and the amounts paid, we think has clearly been shown.

Again as stated by Judge Wright, in the case of Commissioners of Scioto County v. Gherky, supra.

"Every one is chargeable with the knowledge of the law and a mistake as to the law will not open the way to recover money back, which, in equity should be retained. If anything was wrong in this case, the plaintiffs were particeps criminis. It was as bad for them to pay out the public money against law as for the defendant to ask it of them and receive it."

Can it be said in this case that the auditor or other public officers acted not in ignorance of the fact, but in ignorance of the law in accepting the amounts due the city as shown by the statements of the company? On the contrary, it was their express duty to accept at the beginning of the year the statement of the company as to the number of cars they proposed to

run, and the amounts due therefor. Can it be said that the auditor or other public officers acted wrong in so doing, and that they were particeps criminis to the transaction? We think clearly not.

In short it may be said that while the yearly statements furnished in advance, showing the amounts due upon the average method of ascertaining the number of lineal feet of cars run might constitute an accord and satisfaction, provided the proper conditions existed, such statements could not, under this ordinance requiring payments in advance, constitute the defense of accounts stated and settled. We have shown that the proper conditions were wanting to make good the defense of accord and satisfaction.

The statements rendered and payments made in advance, not constituting accounts stated and settled at the time, because of the right of the city at the end of the year to demand payment for the actual number of cars run, they did not at any time thereafter become such. Consequently the city could not be deprived of its right to recover unless by way of estoppel. There is no question of esoppel involved in this case, because it is not shown that the conduct or inaction of the city lead the defendant to do anything prejudicial to its interests by reliance upon the city's conduct.

It is conceded by counsel for defendant that the city is entitled to recover the percentage on earnings from advertisements from 1883 to 1892, and indeed this must be so, inasmuch as the quarterly statements rendered by the defendant did not purport to show any revenue derived from this source.

This makes it unnecessary for us to consider the claim urged with great zeal and ability by counsel for the plaintiff, that the matters in dispute were not a proper subject for practical construction, or proper subject for account stated and settled, because the amounts due the city were due by way of governmental exaction, and not upon contract between the parties.

The decision of the court, therefore, is that the plaintiff is entitled to recover from the defendant, two and one-half per cent. from 1883 to 1892, inclusive, with interest upon such amounts from the date when they became due and payable, and that the plaintiff is also entitled to recover from the defendant the difference in amounts upon the highest monthly average and the yearly average for the years 1881, 1883, 884, 1885, 1886, 1888, 1891 and 1892, as shown by the statement of the city's accountant, together with interest on such amounts from the time they become due and payable.

E. C. Kinkead and Wade H. Ellis, Corporation Counsel, for Plaintiff.

Paxton, Warrington & Boutet, and Kittredge & Wilby, for Defendant.

Opinion on motion for new trial.
JACKSON, J.

Since the opinion heretofore announced herein was rendered, counsel for the defendant have presented objections to the allowance of the judgment entry presented by the city, based upon the claim that interest is erroneously sought to be allowed upon the amounts found to be due the city for percentage upon gross earnings and for car license fees. Defendant has also filed a motion for a new trial, in support of which it is contended that the court erred in holding that the statements annually rendered showing the amounts due for car licenses did not constitute accounts stated and settled.

We will briefly consider these claims in their order.

In the first place, it is contended that interest should not be allowed, if it should be found, as contended for by plaintiff upon the original hearing, that the amounts due the city were due by way of governmental exaction, and not by way of contract between the parties. It must be conceded that interest is not recoverable upon sums due a municipality by way of taxes; but counsel for plaintiff would draw a distinction in this respect between amounts due by way of taxes, and amounts due by way of license for some privilege granted by the municipality. They contend that interest is

recoverable upon such latter claim, and that the sums due the city in this case fall within the class of licenses. Without passing upon the soundness of this attempted distinction, it must be held upon the authority of Cincinnati Street Railway Co. v. Smith, 29 Ohio St., 291, that the amounts due the city here are due by way of contract between the parties, and not by way of governmental exaction.

In the next place it is contended that interest is not recoverable upon the amounts found due, because no demand was made for the principal sums prior to the bringing of this suit.

In many cases demand of payment is necessary to authorize a recovery of interest. This may in general be said to be the rule with reference to accounts and unliquidated claims, but it is not so with reference to amounts which are definite and certain, and where an absolute obligation rests on one to pay on a day certain.

In Volume 11, American and English Encyclopedia of Law, page 390, the general proposition supported by abundant authorities is thus stated: "Wherever there is a written contract for a sum of money payable upon demand, or upon a day certain, interest is payable if payment of the principal sum is not made on demand, or at the time agreed upon." As stated in the original opinion, the sums due the city were not unliquidated, but were capable of exact ascertainment by mathematical calculation; and an absolute obligation rested on the defendant to pay the city these sums on certain days specified in the ordinance in question. Consequently we think no demand was necessary to entitle the city to recover interest.

As to the contention, with reference to accounts stated and settled, on motion for new trial, the claim is that, beginning with the year 1886, the defendant embodied in each statement for car licenses for the succeeding year the actual average number of lineal feet of cars operated for the preceding year, and payments were then accordingly made upon such statements. Conceding, therefore, that the statements rendered at the beginning of

the year and payments made at that time did not then constitute accounts stated and settled, because they could not and did not purport to give the actual number of cars that would be run that year, nevertheless, it is contended that when the yearly average for that year was shown in the statement for the subsequent year, the city was then sufficiently advised, and that in accepting payments on such statements it became bound by way of accounts stated and settled.

There appears to be several objections to this contention. In the first place the defendant never furnished the city with any statement showing the actual number of cars operated for any year, and never made payments purporting to be upon the actual number of cars operated. We have held upon the authority of the Mt. Auburn Street Railway case that the defendant's method of paying upon the yearly average of cars operated was entirely erroneous. It must, therefore, follow that the statements rendered and payments made based upon the yearly average system could not and did not purport to be upon any correct method of computation. They did not even on their face purport to show to the city the correct amount which the city was entitled to demand and receive; and while such statements might bind the city by way of accord and satisfaction, or by way of practical construction of a contract, provided the proper conditions existed, they could not bind it by way of accounts stated, because the method adopted was wrong, and the statements themselves so showed. Furthermore, the statements did not in any instance purport to show the highest monthly average, but only the yearly average of cars operated; and it is on the highest monthly average which the plaintiff seeks to recover in default of proof as to the actual number of cars run. Again the testimony shows that the defendant kept no books showing the actual number of cars run for any year. The number of cars run was kept on loose slips of paper which were destroyed at the end of the year. Therefore the plaintiff had no practi-

[COPYRIGHT, 1899, BY CARL G. JAHN.]

cal way of ascertaining the actual number of cars run, and the amounts which it was legally entitled to receive from the defendant. This information belonged exclusively to the defendant, therefore it can not be said that the parties settled their accounts in full view and with full knowledge of all the circumstances surrounding the transaction.

Motion for new trial overruled and entry allowed.

Ellis G. Kinkead and Wade H. Ellis, Corporation Counsel of the city of Cincinnati, for Plaintiff.

Paxton, Warrington & Boutet and Kittredge & Wilby, for Defendant.