**BARCLAYS AMERICAN/COMMERCIAL, INC., Appellant,**

**v.**

**ROYP MARKETING GROUP, INC. et al., Appellees.**

[Cite as *Barclays American/Commercial, Inc. v. ROYP Marketing Group, Inc.* (1988), 61 Ohio App.3d 701.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–431.

Decided Dec. 13, 1988.

*Benesch, Friedlander, Coplan & Arnoff* and *Joel H. Mirman, Arter & Hadden* and *Danny L. Cvetanovich,* for appellant.

*C. William Dawson Co., L.P.A.,* and *C. William Dawson,* for appellee Estate of Michael K. Wittman.

*G. Rand Smith Co., L.P.A.,* and *G. Rand Smith,* for appellee Lynne M. Wittman.

---

REILLY, Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas.

This case involves a complaint filed by a lender, plaintiff Barclays American/Commercial, Inc., against two guarantors, Michael K. Wittman, deceased, and Lynne M. Wittman, his wife. The complaint was also filed against ROYP Marketing Group, Inc. (hereinafter "ROYP") and George C. Sheets, a former president and shareholder of ROYP. Plaintiff's action against ROYP was stayed by the filing of a bankruptcy petition. Sheets was dismissed from the action.

Plaintiff and ROYP entered into a factoring agreement in early 1981, whereby plaintiff was to factor the accounts receivable of ROYP for a fee. Under the factoring agreement, plaintiff agreed to purchase ROYP's accounts receivable which resulted from "absolute sales" (non-returnable purchases), as opposed to "guaranteed return sales" (returnable purchases) to customers.

Plaintiff advanced funds to ROYP and obtained a security interest in ROYP's accounts receivable inventory and bank accounts as collateral for the advances. Pursuant to the agreement, plaintiff could collect the balance due for money advances, plus interest, without giving formal demand or notice to ROYP. Further, the collateral for the advances could be taken without notice and sold, and ROYP would remain liable for any deficiency after any sale proceeds were applied to the balance.

ROYP engaged in the purchase and resale of novelty merchandise. In July 1983, the factoring agreement was amended to increase plaintiff's compensation for its factoring services. The factoring agreement was initially guaranteed by Sheets, then president of ROYP, and Michael Wittman, the secretary of ROYP at that time. Thereafter, in August 1983, Mr. Wittman became the sole shareholder and president of ROYP. He and his wife, Lynne Wittman, executed a guaranty identical to the previous guaranty and guaranteed the original factoring agreement. The guaranty was subject to North Carolina law.

In the latter part of 1983, ROYP sold to the Kroger Company ("Kroger") a shipment of cubic zirconium jewelry on a guaranteed return basis. ROYP assigned the accounts receivable to plaintiff. Subsequent shipments to Kroger were made, but Kroger's promotional program was not successful.

In June 1984, plaintiff advanced $250,000 to ROYP against outstanding invoices. According to defendants, approximately $500,000 in invoices from the Kroger promotions were factored through plaintiff. At the time of the advancement, ROYP owed plaintiff $123,000. Later, plaintiff audited ROYP's books and concluded that the accounts receivable were insufficient to cover the funds advanced to ROYP, which provided plaintiff with a plan for repaying the money advanced.

Plaintiff met with Mr. Wittman in early August 1984 and informed him that ROYP had breached the factoring agreement. Plaintiff then filed suit to recover the money advanced, and obtained a restraining order prohibiting ROYP from engaging in further business. Claims against ROYP were based upon its default under the factoring agreement. The claims asserted against defendants Lynne M. Wittman and the Estate of Michael K. Wittman were based upon their guaranty of payment. The latter claims are the subject of this appeal. The claims asserted against ROYP have yet to be adjudicated.

Subsequently, plaintiff took possession of ROYP's inventory, which was later sold in May 1986 for $10,000. The amount sought by plaintiff at trial was $356,043.13. Following the trial, the court issued findings of fact and conclusions of law, and granted judgment for defendants.

Plaintiff advances the following assignments of error:

"I. The trial court erred as a matter of law in concluding that the guaranty executed by Michael K. Wittman and Lynne M. Wittman was of no legal and binding effect.

"II. The trial court erred as a matter of law in concluding that there was no consideration for the guaranty.

"III. The trial court erred as a matter of law in concluding that Lynne M. Wittman's purported lack of knowledge of the content and effect of the guaranty released her from liability under the guaranty.

"IV. The trial court erred as a matter of law in concluding that a purported oral modification of the factoring agreement between Barclays American/Commercial, Inc. and ROYP Marketing Group, Inc. released Michael K. Wittman and Lynne M. Wittman from liability under the guaranty.

"V. The trial court erred as a matter of law in concluding that notice of the default of ROYP Marketing Group, Inc. under the factoring agreement and notice of the sale of the collateral were required to be given to Michael K. Wittman and Lynne M. Wittman, and that the purported lack of such notice released Michael K. Wittman and Lynne M. Wittman from liability under the guaranty.

"VI. The trial court erred as a matter of law in concluding that Barclays American/Commercial, Inc. failed to establish the amount of its damages.

"VII. The trial court's judgment is against the manifest weight of the evidence."

Plaintiff's first, second, third, fourth and fifth assignments of error relate to the enforceability by plaintiff of the guaranty agreement signed by defendants. In response to the first assignment of error, defendants argue that the trial court properly found no recovery under the guaranty because plaintiff failed to prove that ROYP breached the factoring agreement.

It is apparent under the guaranty that plaintiff could seek payment from defendants on demand. After determining that the factored accounts receivable were insufficient to cover the advance to ROYP, plaintiff sought the balance due and ROYP was unable to meet its contractual obligation to pay on demand. The factoring agreement does not require either formal demand or notice.

Pursuant to the first paragraph of the guaranty, defendants specifically guaranteed funds which plaintiff had advanced to ROYP and for which ROYP remained indebted. The guaranty is unambiguous as defendants made an absolute and unconditional promise to pay ROYP's debts:

" * * * [A]ll monies to be paid to BarclaysAmerican by Client [ROYP], including any loans or advances, including overadvances, of funds Barclays-American has made or hereafter makes to Client evidence by notes or by open account debits to Client's Account on BarclaysAmerican's books, and * * * all other obligations which Client may presently owe to BarclaysAmerican and all sums which shall become due and owing to BarclaysAmerican whether under

said [factoring] agreement or however created and whether direct, indirect, absolute or contingent."

Thus, the trial court erred in finding that the guaranty was not legally binding upon defendants.

In regard to the second assignment of error, the trial court stated that there was no consideration given for the guaranty. When a guaranty is executed subsequent to an extension of credit to the principal debtor, additional consideration for the guaranty is required. *Cowan, McClung & Co. v. Roberts* (1904), 134 N.C. 415, 46 S.E. 979. In this case, there was sufficient consideration since the guaranty was executed in contemplation of future extensions of credit to ROYP. Hence, the trial court erred as a matter of law in finding that there was no consideration exchanged for the guaranty.

In sum, ROYP was contractually obligated to repay money advanced to it by plaintiff without formal demand or notice. ROYP did not repay that money when requested and, therefore, it breached its contract. This was communicated to ROYP in August 1984, prior to the filing of the complaint. The failure of ROYP to pay its debt prompted plaintiff's cause of action against the guarantors. The guaranty was legally binding and was supported by sufficient consideration.

The first and second assignments of error are well-taken.

The third assignment of error involves the trial court's finding that defendant Lynne Wittman's alleged lack of knowledge of the content and effect of the guaranty released her from liability under the guaranty. Defendants maintain that her signature merely raises a presumption that she had knowledge of the content of the guaranty, but that the presumption was rebutted by her testimony. According to defendants, her purported lack of knowledge released her from liability under the guaranty.

It is noteworthy that no evidence was presented that she thought she was signing another document. Consequently, as a matter of law, she is charged with knowledge of the content of the guaranty. *Branch Banking & Trust Co. v. Creasy* (1980), 301 N.C. 44, 269 S.E.2d 117; *Internatl. Harvester Credit Corp. v. Bowman* (1984), 69 N.C.App. 217, 316 S.E.2d 619, review denied (1984), 312 N.C. 493, 322 S.E.2d 556.

The third assignment of error is well-taken.

As to the fourth assignment of error, the trial court found that an oral modification of the factoring agreement released defendants from liability under the guaranty. See Finding of Fact No. 27. The trial court, however, erred in this determination because defendants expressly waived notice of modification of the factoring agreement:

"The undersigned agree that this guaranty shall not be impaired by any modification, supplement, extension, amendment, release or other alteration of any agreement or of the obligations hereby guaranteed or of any security therefor, to all of which the undersigned consent. * * * "

Defendants do not dispute the applicability of that language. While the modification between the parties was oral, the guaranty is not impaired by any underlying modification, which includes both written and oral modifications. Thus, the trial court's finding that the oral modification released defendants from liability under the guaranty contract was erroneous as a matter of law.

The fourth assignment of error is well-taken.

■ As to the fifth assignment of error, the same reasoning applies to the trial court's finding that the purported failure to give notice of default of ROYP under the factoring agreement and notice of sale of the collateral to defendants released them from liability under the guaranty. Notice of default is not required prior to suing on a guaranty since the creditor's cause of action against the guarantor ripens immediately upon the failure of the principal debtor to pay the debt. See *Federal Deposit Ins. Corp. v. Crouch* (C.A.6, 1987), 816 F.2d 1110 (applying North Carolina law). Moreover, defendants expressly waived all forms of notice under the guaranty:

"The undersigned waive notice of acceptance hereof or of any transaction with BarclaysAmerican; presentment and protest of any instrument and notice thereof; notice of default; and forbearance or extension and any other notices. * * * "

Thus, plaintiff was not required to give notice to defendants, who had expressly waived such notice in the guaranty. See *Internatl. Harvester Credit Corp., supra.*

The fifth assignment of error is well-taken.

■ In the sixth assignment of error, plaintiff addresses whether the trial court erred in finding that plaintiff failed to establish damages. Plaintiff maintains that an account stated was proven. This court in *Brown v. Columbus Stamping & Mfg. Co.* (1967), 9 Ohio App.2d 123, 126, 38 O.O.2d 143, 145, 223 N.E.2d 373, 375, defined an "account," in reference to the former R.C. 2309.32, as consisting of the following:

"An account must show the name of the party charged. It begins with a balance, preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum. Following the balance, the item or items, dated and identifiable by number or otherwise, representing charges, or debits, and credits, should appear. Summarization is

necessary showing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due."

Plaintiff, through the testimony of a representative, Mr. Sullivan, sufficiently proved that an account existed between the parties. Plaintiff's Exhibit 8 consists of a two-page computer printout addressed to ROYP for the month ending April 30, 1986. As of April 1, 1986, the balance forwarded was $361,464.57. Interest charged for that month amounted to $3,313.43. The statement balance as of April 30, 1986 was $364,778.00. Including the interest due at the commencement of trial on May 12, 1986, the statement balance was $366,043.13.

An account rendered by a person to another not objected to by the latter within a reasonable time becomes an account stated. *Nello L. Teer Co. v. Dickerson, Inc.* (1962), 257 N.C. 522, 126 S.E.2d 500. An account stated is an agreed balance of accounts expressed or implied, after admission of certain sums due or an adjustment of the accounts between the parties. *Nello L. Teer Co. supra; Rudolph Bros. v. Husat* (1961), 90 Ohio Law Abs. 1, 25 O.O.2d 376, 187 N.E.2d 190.

The guaranty contract contained an "accounts stated" provision:

" * * * If the undersigned is an officer of the Client [ROYP] or is otherwise actively associated with the Client and he or she does not take exception (in writing sent by registered mail return receipt requested) to the monthly client statement, it will be deemed correct and become an account stated thirty (30) days after it is sent to the Client. * * * "

For the following reasons, an account stated was not established by plaintiff. Even if one would have been established, an account stated is only *prima facie* correct and was rebutted by defendants.

Michael Sullivan testified that as of the trial date the balance due for money advanced to ROYP, plus interest, less the amount received on the sale of the collateral, was $356,043.13. Plaintiff submitted to ROYP monthly statements of account; however, those documents were not introduced into evidence. Moreover, there is no indication that ROYP or defendants ever received plaintiff's Exhibit 8. Sullivan merely testified that the printout was presumably mailed to ROYP pursuant to regular and ordinary business practices.

Sullivan testified that plaintiff failed to send an account to ROYP for the months ending September through December 1984. He testified, however, that there were no accounts receivable on the books at the time of trial and that all accounts receivable which plaintiff had collected had been credited to ROYP's account prior to trial. Plaintiff's Exhibit 8 does not substantiate this testimony, nor was there documentary evidence introduced as to this conten-

tion. Upon cross-examination, Sullivan was unable to identify the amount of the outstanding accounts receivable collected from Kroger which were purportedly to have been credited to the statement balance. Such gaps of information, which are not corroborated by plaintiff's Exhibit 8, casts considerable doubt on the validity of the closing balance of $366,043.13. Hence, an account stated was not proven.

The evidence presented, however, was sufficient to show the existence of an account. It is apparent that money was due and payable on the account, but that the amount due has not been established. The fact that plaintiff held $466,465.70 in accounts receivable as security is not dispositive that no money was due and payable since the sales items shipped to Kroger were subject to return.

Absolute certainty is not required in proving damages. Nevertheless, there must be sufficient evidence presented for the trier of fact to arrive at a reasonable conclusion without speculation. Defendants did not introduce evidence to rebut plaintiff's evidence that money was due and payable. Hence, the trial court erred in not awarding damages.

Since plaintiff's Exhibit 8 is not proof of an account stated, it will be plaintiff's burden on remand to present sufficient evidence of the balance due and payable by introducing such evidence, but not limited to the following: the monthly statements during the course of the business relationship between plaintiff and ROYP; the accounts receivable collected from Kroger and credited to ROYP's balance; breakdown between principal and interest, and the status of the account for the months of September through December 1984.

The sixth assignment of error is well-taken.

Plaintiff's seventh assignment of error presents two issues not previously addressed. In dispute is whether the trial court's findings that plaintiff failed in its duty to mitigate damages and plaintiff's alleged failure to give proper notice to defendants on the sale of the collateral voids any potential liability of defendants for the deficiency. Regardless of whether defendants received notice of the sale, the guaranty provided that all forms of notice were waived by the guarantors. Accordingly, while we accept the trial court's finding that plaintiff failed to give notice of the sale, such notice was not required.

Further, plaintiff contends that the trial court's finding that it failed in its duty to mitigate its damages was against the manifest weight of the evidence. The failure to mitigate damages does not necessarily preclude recovery of damages. But, increased losses incurred by plaintiff due to its negligence for failure to exercise reasonable care in mitigating damages are

borne by plaintiff. However, plaintiff is not required to take impractical or unreasonable steps which go beyond its duty to mitigate its damages.

The trial court specifically found that plaintiff failed to mitigate damages by not selling to Kroger an order of cubic zirconium jewelry for a total loss of $166,320. There is no indication that the shipment of the order to Kroger would have mitigated plaintiff's damages. The sales to Kroger were subject to return and, as Sullivan testified, Kroger returned large quantities of the jewelry.

There was testimony that the promotional program "fell flat on its face." The evidence in the record, which was unrebutted, demonstrated that Sullivan made considerable efforts to sell the collateral, including finding two employees to sell the jewelry; contacting manufacturing representatives who sold costume jewelry; advertising the jewelry and offering to sell it to several companies. In addition, plaintiff advertised in trade publications designed to liquidate that type of collateral.

While defendants contend that plaintiff made no attempt to contact businesses similar to theirs in an effort to dispose of the collateral, Michael Wittman, who had promised plaintiff that he would supply the names of such companies, never did so.

Moreover, a direct mail program conducted by a client to determine the marketability of the jewelry was unsuccessful. As Sullivan stated: " * * * Generally, without doubt, everybody told us that it was of poor quality [the collateral] and very little value except for liquidation." The best offer which could be obtained for the collateral by the aforementioned methods was $10,000. In sum, there was no evidence that plaintiff failed to mitigate its damages. Hence, the trial court's finding that plaintiff failed to mitigate its damages was against the manifest weight of the evidence.

For the foregoing reasons and those stated in the previous six assignments of error, the seventh assignment of error is well-taken.

Plaintiff's assignments of error are sustained. The judgment of the trial court is reversed and the cause is remanded on the limited issue to determine the amount of damages due and payable owed by defendants to plaintiff, consistent with this opinion and in accordance with law.

*Judgment reversed*
*and cause remanded.*

McCORMAC and WIEST, JJ., concur.

MARK K. WIEST, J., of the Wayne County Court of Common Pleas, sitting by assignment.