OPINION
{¶ 1} Appellants, The Ridgway Hatcheries, Inc., et al. ("Ridgway Hatcheries") appeal the July 3, 2003 judgment of the Common Pleas Court of Marion County granting summary judgment in favor of Appellees, Hamilton Farm Bureau Cooperative, Inc. ("Hamilton Farm").
 {¶ 2} John Ridgway became president of The Ridgway Hatcheries, Inc. when the company became incorporated in 1952. In 1994, Ridgway Hatcheries began doing business with Hamilton Farm Bureau Cooperative, Inc. Ridgway Hatcheries and Hamilton Farm entered into a business agreement in 1994 which commenced with a business credit application signed by vice-president Dean Ridgway. John Ridgway stated in his affidavit that it was specifically stated and agreed upon that Ridgway Hatcheries would not pay finance charges due to the nature of the business.
 {¶ 3} Hamilton Farm began issuing invoices to Ridgway Hatcheries in 1995. In 2000, subsequent to a contract entered into by the parties, Hamilton Farm began to supply Ridgway Hatcheries with farm supplies and materials on an open account. Hamilton Farm submitted monthly statements to Ridgway Hatcheries which included a restatement of the payment terms that payment in full was due by the 15th of each month. The payment terms also stated that Ridgway Hatcheries was required to pay the "new balance" before the 10th of the next month in order to avoid additional finance charges. Around July, 2000, Ridgway Hatcheries failed to make timely payment for the farm materials provided the previous month and Hamilton Farm imposed a finance charge on the balance existing as of the due date for payment. Ridgway Hatcheries failed to object to the imposition of the finance charge upon receipt of the next monthly statement which indicated a finance charge had been imposed and the amount of the charge. Ridgway Hatcheries has failed to pay the full balance on the account, including imposed finance charges, by the 15th of each month since the finance charges have been imposed.
 {¶ 4} In May, 2001, Ridgway Hatcheries received a letter from Hamilton Farm's representative, George House, mentioning the failure of Ridgway Hatcheries to pay the finance charges. John Ridgway responded by writing a letter to Hamilton Farm stating there had been an agreement that no finance charges were to be paid. A separate letter was written by John Ridgway in the spring of 2001 that reaffirmed there was never any intent by Ridgway Hatcheries to pay a finance charge.
 {¶ 5} Hamilton Farm's credit manager, William Reinbold, filed an affidavit that claimed the parties entered into an agreement in January, 2000, for Hamilton Farm to supply farm materials and supplies and that, thereafter, monthly statements for the materials included the information that a finance charge would be imposed on late payments. Ridgway Hatcheries did not object to the imposition of a finance charge by Hamilton Farm until May 23, 2002, and Ridgway Hatcheries has failed to make a timely payment of the full balance on the account since the finance charge was imposed.
 {¶ 6} On May 23, 2002, Hamilton Farm filed a complaint against Ridgway Hatcheries, seeking recovery in the amount of $17,282.26, the balance of the account. Ridgway Hatcheries filed an answer denying responsibility for the account balance, which they argued consisted mainly of finance charges. Hamilton Farm filed a motion for summary judgment in its favor on March 10, 2003. Ridgway Hatcheries filed a motion for summary judgment in its favor on April 30, 2003.
 {¶ 7} On July 3, 2003, the Common Pleas Court of Marion County granted summary judgment in favor of Hamilton Farm and denied summary judgment in favor of Ridgway Hatcheries. The court, thereafter, ordered an additional affidavit of Thomas F. Reinbold, filed by Hamilton Farm on July 14, 2003, to be stricken.
 {¶ 8} It is from the judgment of Common Pleas Court of Marion County granting summary judgment in favor of Hamilton Farm that Ridgway Hatcheries now appeals, raising one assignment of error.
The trial court committed prejudicial error in finding that nogenuine issue of material fact existed as to appellee's complaintand by sustaining appellee's motion for summary judgment.
 {¶ 9} We first note that the standard for review of a grant of summary judgment is one of de novo review. Lorain Natl. Bankv. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129,572 N.E.2d 198. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 10} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, syllabus, 526 N.E.2d 798. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be granted. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
 {¶ 11} Ridgway Hatcheries argues that there are numerous issues of fact that should have precluded the trial court from granting summary judgment in this case. Specifically, Ridgway Hatcheries disputes the fact that the parties entered into a new contract in the year 2000 which included finance charges on unpaid balances. In addition, Ridgway Hatcheries disputes the fact that they did not object to the assessment of finance charges and/or did not object within a reasonable time.
Account Stated
 {¶ 12} The term "account stated" has been defined as "an agreed balance of accounts, expressed or implied, after admission of certain sums due or an adjustment of the accounts between the parties, striking a balance, and assent, express or implied."Creditrust Corp. v. Richard (July 7, 2000), 2d Dist. No. 99-CA-94, unreported, 2000 WL 896265, * 5. "Account stated" has also been defined as "an agreement between parties, express or implied, based upon an account balanced and rendered, and as an agreement between parties between whom there has been an account." Id. An account stated is based upon assent, either express or implied, by the parties that the balance is correct. Id., citing 1 Ohio Jurisprudence 3d (1998) 202, Accounts and Accounting, Section 24.
 {¶ 13} Of particular importance in the case before us is the fact that "an account rendered by one person to another and not objected to by the latter within a reasonable time becomes an account stated." Creditrust Corp., 2000 WL 896265 at *5;Barclays American/Commercial, Inc. v. ROYP Marketing Group,Inc. (1988), 61 Ohio App.3d 701, 708, 573 N.E.2d 1115. It is the duty of the person to whom the account is rendered to examine the account within a reasonable time and make objections if there is a dispute as to the correctness of the account. Cincinnati v.Cincinnati St. Ry. Co. (1899), 9 Ohio Dec. 235, 6 Ohio N.P. 140.
What constitutes a reasonable time within which objection mustbe made to an account rendered in order to preclude a presumptionof assent and, thus, prevent it from becoming an account stated,depends on the particular factors of each case, such as thenature of the transaction, the relation of the parties, theirdistance from each other and the means of communication betweenthem, the usual course of business between them, and theirbusiness capacity and intelligence.
 Creditrust Corp., 2000 WL 896265 at *5, citing 1 Ohio Jurisprudence 3d (1998) 204, Accounts and Accounting, Section 27. An established account stated is prima facie evidence of its correctness although a showing by clear and convincing evidence of mistake or fraud by the other party is grounds for having the account stated set aside. Hummer v. Zeller (June 4, 1993), 3d Dist. No. 4-92-17, 1993 WL 195101, *2.
 {¶ 14} Both Hamilton Farm and Ridgway Hatcheries agree that finance charges began appearing on monthly statements from Hamilton Farm in 2000. Both parties also agree that Ridgway Hatcheries continued to pay on the account after the finance charges appeared on the monthly statements. Ridgway Hatcheries asserts that it objected to the finance charges in the spring of 2001, almost a year after the finance charges began appearing on the statements. Ridgway Hatcheries admits that written communication regarding the unpaid balance on the account was initiated by Hamilton Farm in an effort to recover the balance from Ridgway Hatcheries. Ridgway Hatcheries claims that it responded to Hamilton Farm by denying that there was an agreement to pay any form of a finance charge.
Added Terms
 {¶ 15} Ridgway Hatcheries argues that there is no account stated because there was no agreement as to the assessment of finance charges. Ridgway Hatcheries asserts that the parties formed a contract in 1994 that provided Ridgway Hatcheries was not subject to finance charges. It is true that an account stated is predicated on a contract involving the proper subject matter of an account in which the parties have agreed to a definite amount as the correct balance due thereon. Personal IncomeConsultants, Inc. v. Mamone (1984), 20 Ohio App.3d 273,485 N.E.2d 781. However, the original contract terms do not need to specifically state an agreement as to finance charges in order for that term to become a valid part of the contract. Pursuant to R.C. 1302.10(B), terms may be added to a contract and become part of it thereon. When terms are added to a contract between merchants, the added terms are construed as proposals to the contract and will become part of the contract unless the offer limits acceptance to the terms of the offer, the additional terms would materially alter the contract or notification of objection to the added terms is given to the other party within a reasonable time. R.C. 1302.10(B). Further, the Official Comment 5 to the Uniform Commercial Code, Section 2-207, which R.C. 1302.10
codifies, provides:
Examples of clauses which involve no element of unreasonablesurprise and which therefore are to be incorporated in thecontract unless notice of objection is seasonably given are: * * *a clause providing for interest on overdue invoices or fixingthe seller's standard credit terms where they are within therange of trade practice and do not limit any credit bargainedfor; * * *.
 {¶ 16} There is no evidence in the record refuting the fact that the term providing for finance charges was added to the contract between Ridgway Hatcheries and Hamilton Farm in the year 2000. No evidence was provided that the terms of the contract were limited to the terms in the original offer or that the added term materially altered the contract. John Ridgway admitted to seeing the new term for finance charges on the monthly statements for Ridgway Hatcheries and even admitted to ignoring the finance charges when they began appearing on the statements. April 30, 2003 Affidavit of John Ridgway, ¶ 7. Ridgway Hatcheries even suggests that the burden was on Hamilton Farm to object to Ridgway Hatcheries' failure to pay the finance charges, which Hamilton Farm eventually did in May and June, 2001. However, as R.C. 1302.10(B) provides, the burden was clearly on Ridgway Hatcheries to give notification of its objection to the added term within a reasonable time.
 {¶ 17} In Elgin Steel, Inc. v. Perfection Mfg. Corp. (Apr. 14, 1981), 5th Dist. No. CA-1955, unreported, 1981 WL 6222, *3, the court found that the buyer was bound by the terms of interest incorporated on the seller's invoices. Regarding the buyer's claim that he objected to the added terms within a reasonable time, the court found that "a number of orders were shipped with the invoices containing the additional interest term, prior to the time that further purchase orders were submitted to the seller." Id. Likewise, in Plechaty v. Russell (1981), 8th Dist. No. 42449, unreported, the court found that the terms of the contract between the parties were reflected in the invoices sent to the party responsible for payment of the services rendered. The court quoted the Ohio Supreme Court case Berjian v. OhioBell Tel. Co. (1978), 54 Ohio St.2d 147, 153, 375 N.E.2d 410, in which the court found that an advertiser had accepted as part of his contract, by way of silence, a limitation of liability clause printed in the directory advertising agreement that was sent to the advertiser after he placed his advertisement.
 {¶ 18} In the case sub judice, Ridgway Hatcheries continued to pay on the monthly statements, at least as to the principal, and continued to order goods from Hamilton Farm despite the inclusion of the added term for finance charges. Ridgway Hatcheries failed to make any objections as to the term for finance charges until approximately a year after the term appeared on the monthly statements, and then only objected after receiving written correspondence from Hamilton Farm attempting to recover the balance due on the account. Such inaction by Ridgway Hatcheries constitutes an acceptance of the added term of finance charges to the contract between the parties and also constitutes an agreement between the parties as to the amount of the account stated. Ridgway Hatcheries was under a duty to examine its monthly statements for incorrect accounting and its lack either to do so or to object to such is acquiescence on the part of Ridgway Hatcheries to the new terms of the contract.
Breach of Contract
 {¶ 19} To prove breach of contract, a party must establish the following elements: "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Doner v. Snapp (1994), 98 Ohio App.3d 597, 600,649 N.E.2d 42. We have already found that a valid contract existed between the parties that included the added term of finance charges. We also note that there is no dispute as to the performance of Hamilton Farm in supplying the goods purchased by Ridgway Hatcheries. As Ridgway Hatcheries has failed to pay the balance on the account due, Ridgway Hatcheries has breached the contract with Hamilton Farm and is liable for the remainder of the balance on the account.
 {¶ 20} Based on the foregoing, we overrule the assignment of error presented by Ridgway Hatcheries and affirm the judgment of the Common Pleas Court of Marion County.
Judgment affirmed.
Shaw, P.J., and Cupp, J., concur.