DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Glenn Fausz, appeals from a judgment entry by the Williams County Court of Common Pleas granting appellee Robert M. Gioia's motion for summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In early 2001, Continental Capital Corporation applied for a loan at Henry County Bank. The bank agreed to make the loan, in the amount of $1,500,000, but only if 11 officers, directors and investors co-guaranteed it. As the bank's March 6, 2001 commitment letter makes clear, the loan was a single "package" transaction that would take place only if certain corporate and individual guarantees were included. Among the package documents was a "Line of Credit Note" that detailed the terms of the loan and enumerated the various guaranties that secured the note; in addition, there were 11 individual guaranty documents, each of which was executed by a single co-guarantor.
 {¶ 3} By signing the guaranty documents, each co-guarantor agreed, by way of various waiver provisions that were contained in the guaranty documents, not to make a claim against any other co-guarantor. Specifically, these documents provided:
 {¶ 4} "The Undersigned waives any and all defenses, claimsand discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full.
 {¶ 5} "* * *
 {¶ 6} "The Undersigned waives any claim, remedy or otherright which the Undersigned may hereafter acquire against * * * other persons obligated to pay Indebtedness * * *including without limitation, any right of subrogation,contribution, reimbursement, [or] indemnification * * * the Undersigned may have against * * * [any] other party obligated for Borrower's debts, whether or not such claim,remedy or right arises in equity, or under contract * * * orcommon law." (Emphasis added.)
 {¶ 7} The guaranty documents also provided that the co-guarantors were prohibited from altering the terms of the guaranty without first obtaining the written consent of the bank. Undisputed testimony by Continental Capital attorney Lyman Spitzer provides that, despite the waiver provisions and the prohibition against alteration that were set forth in the guaranty documents, he drafted several versions of a side-agreement, entitled "Loan Guarantee Agreement Among Guarantors," for the co-guarantors. From March 7 to March 14, 2001, Spitzer prepared no less than five drafts of this agreement, each of which contained terms that were materially different from each of the other drafts.
 {¶ 8} Although the record contains several drafts that were signed by various co-guarantors, no single draft bears all of their signatures. In addition, some co-guarantors signed more than one version of the agreement. The parties dispute whether a version exists that contains the signatures of both Fausz and Gioia, but when construing the evidence in a light most favorable to Fausz, it is at least possible that Fausz and Gioia signed a version of Spitzer's first draft. The terms of this draft provided that the partial guarantors (including Fausz) were entitled to full indemnification by the full guarantors (including Gioia).[1]
 {¶ 9} On or about February 21, 2002, the Henry County Bank released and discharged Gioia from his guaranty. The release came in connection with the termination of his employment by Continental Capital.
 {¶ 10} On June 15, 2002, some 15 months after Fausz executed his guaranty document, he signed an additional document with the bank known as a "Forbearance Agreement". By the "Forbearance Agreement," Fausz reaffirmed his waiver of "any claim, remedy or other right" against his co-guarantors. The terms of the agreement relevantly provided as follows:
 {¶ 11} "8. Confirmation of Guaranties. The parties designated herein as Guarantors each reaffirm and confirm thecontinued effect and enforceability against them of the guarantyagreement which they have executed, subject only to the modifications set forth herein, and consent to the terms and conditions of this Forbearance Agreement.
 {¶ 12} "9. Governing Terms. Administration of theBorrower's obligations shall continue to be governed by thecovenants, terms, and condition of the Borrower's loan documents(including the Note) and guaranty agreements and security documents, which are incorporated by this reference, except to the extent that such covenants, terms, and conditions are inconsistent with an express provision of this Forbearance Agreement, in which event the express provision of this Forbearance Agreement shall control." (Emphasis added.)
 {¶ 13} Continental Capital subsequently ceased operations, and the loan went into default. The bank filed a single lawsuit against all of the remaining co-guarantors, including Fausz. Pursuant to this litigation, Fausz was required to pay $200,000 on his guaranty.
 {¶ 14} On December 12, 2003, Fausz filed his complaint in the instant case, wherein he demanded contribution under the "Loan Guarantee Agreement" in an amount of up to $200,000 from Gioia. Gioia filed a motion for summary judgment, and on June 30, 2005, the trial court granted the motion on grounds that Fausz, by virtue of his signed guaranty agreement, had waived any claim against Gioia. Fausz timely appealed this entry of judgment, presenting the following assignments of error:
 {¶ 15} "I. The Court Erred in Basing its Decision and Order on the Law of Contribution.
 {¶ 16} "II. The Court Erred in Granting Defendant/Appellee's Motion for Summary Judgment."
 {¶ 17} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Civ.R. 56(C) provides:
 {¶ 18} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 19} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. Ryberg v. Allstate Ins. Co.
(July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son,Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621, 629.
 {¶ 20} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 21} In support of his first assignment of error, asserting that the trial court erred in basing its decision on the law of contribution, Fausz points to the recitation of facts contained in the trial court's decision, wherein it was stated that, "Fausz seeks recovery against Gioia for contribution, as Bank had discharged Gioia from the guaranty." Fausz objects to this language on the grounds that his complaint was based upon the "Loan Guarantee Agreement," and not upon common law contribution.
 {¶ 22} Review of the trial court's decision reveals that its determination was, in fact, based on the law of waiver as applied, in particular, to the waiver of rights set forth in the guaranty document that was signed by Fausz. The court stated that "one specific issue is dispositive of the matter * * *: the purport and efficacy of Fausz's waiver of rights of contribution and subrogation by fellow guarantors. It is solely on that issue that the Court finds that Gioia prevails and summary judgment is granted in his favor and against Fausz." (Emphasis added.) In objecting so strenuously to the court's use of the word "contribution," Fausz seems to forget that he is the one who initially presented it, by way of his complaint, wherein he stated: "By the terms of the Agreement, Gioia agreed to pay in contribution any amount paid by Plaintiff to the Bank on the Note, in excess of a certain amount, up to a maximum of $300,000." Fausz's first assignment of error is without merit and, therefore, is found not well-taken.
 {¶ 23} Fausz argues in his second assignment of error that the waivers set forth in the guaranty should not be enforced against him because he did not actually intend to waive any right to seek "protection" from the other guarantors. As evidence of his lack of intention to be bound, he notes that both his guaranty and the "Loan Guarantee Agreement" were executed on his behalf by his wife under power of attorney. By this statement, Fausz implies that he should be relieved from the effects of the waiver simply because he failed to read it. We are unpersuaded by this argument. As stated by the Supreme Court of Ohio: "Ordinarily, one of full age in the possession of his faculties and able to read and write, who signs an instrument and remains acquiescent to its operative effect for some time, may not thereafter escape the consequences by urging that he did not read it or that he relied upon the representations of another as to its contents or significance." Kroeger v. Brody (1936),130 Ohio St. 559, 566. With respect to guaranties, in particular, the law is clear that a person who signs a guaranty is charged, as a matter of law, with knowledge of the content of that guaranty.Barclays Am./Commercial, Inc. v. ROYP Marketing Group, Inc.
(1988), 61 Ohio App.3d 701, 706.
 {¶ 24} Fausz next argues that the waiver agreement was applicable only to the bank, and not Gioia. We disagree. As indicated above, the loan was a package transaction, wherein the bank required identical guaranties by all 11 co-guarantors. The joint and several nature of the transaction is evidenced by the language contained in the guaranties themselves, which relevantly provides: "This guaranty shall be enforceable against each person signing this guaranty, even if one person signs and regardless of any failures of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint andseveral in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned * * *" (Emphasis added.)
 {¶ 25} That the effects of the guaranty agreements were intended to be reciprocal is further evidenced by the very structure of the transaction, wherein each co-guarantor who promised that he would not make a claim against another co-guarantor received from all of the other co-guarantors an identical promise that they would not bring a claim against him.
 {¶ 26} It is uncontroverted that the waivers referred to herein are clear, unambiguous and enforceable. Nevertheless, Fausz insists that the trial court should have ignored them and should, instead, have focused its attention on the side-agreement purported to have been executed by himself and Gioia. Gioa, however, disputes that any such agreement ever existed.
 {¶ 27} To prove the existence of a contract, a party must establish each of the elements of a contract: an offer, an acceptance, a meeting of the minds, an exchange of consideration, and certainty as to the essential terms of the contract. Nilavarv. Osborn (1998), 127 Ohio App.3d 1, 11. As long as the parties to a contract contemplate that something remains to be done to establish a contractual relationship, no contract has been made.Joseph v. Doraty (1957), 77 Ohio Law Abs. 381.
 {¶ 28} In the instant case, the record contains numerous drafts of the "Loan Guarantee Agreement," each of which contains terms that are materially different from the others. Even if it could be established that Fausz and Gioia signed the same draft, our examination of the document reveals that the parties did not intend to form an agreement until the written agreement was executed by all of the co-guarantors. Not only do the signature pages contain spaces for ten signatures,[2] but language at the top of those pages provides: "IN WITNESS WHEREOF, this Agreement has been executed by the Company and all of the Guarantors effective as of the date first above written." (Emphasis added.) Because none of the drafts were signed by all of the co-guarantors — and three of the co-guarantors did not sign any of the drafts, it cannot reasonably be determined that any single version of the side agreement, or even any combination of versions, amounted to a contract. Thus, we find that the trial court made no error in disregarding the so-called "side-agreement" in its entirety. On the basis of the foregoing, Fausz's second assignment of error is found not well-taken.
 {¶ 29} Accordingly, the judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Skow, J. concur.
[1] As noted by Fausz, the evidence contained in the record indicates that both Fausz and Gioia signed documents with the identifying code: "lfs/C74550/49600/Loan Guarantee Agreement." This identifying code seems to be uniquely associated with Spitzer's first draft. Thus, if it could be demonstrated that both men signed the documents containing the code for the first draft, a fact finder might reasonably be led to conclude that they both executed the first version of the agreement. Or perhaps not.
Fausz himself attached to his brief two very different versions of the agreement, one of which was apparently signed by Fausz, and appeared to be a version of Spitzer's first draft, and another that was apparently signed by Gioia, and appeared to be a version of Spitzer's fifth draft. Under the terms of the fifth draft, partial guarantors were entitled to contribution, but only for amounts paid in excess of their pro rata share.
[2] We note that, for some reason, none of the various signature pages contains a signature line for co-guarantor Robert G. Wiley, M.D.