[Cite as *Educap, Inc. v. Gingery*, 2014-Ohio-4138.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
CRAWFORD COUNTY

EDUCAP, INC.,

    PLAINTIFF-APPELLANT,                CASE NO.  3-14-02

    v.

ABIGAIL GINGERY,                         O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Crawford County Common Pleas Court
Trial Court No. 12CV0452

Judgment Affirmed

Date of Decision:   September 22, 2014

APPEARANCES:

    *Megan J. Urban* for Appellant

    *Matthew M. Nee*  for Appellee

**SHAW, J.**

{¶1} Plaintiff-appellant Educap, Inc. ("Educap") appeals the February 14, 2014 judgment of the Crawford County Common Pleas Court denying Educap's claims that it was owed money by defendant-appellee Abigail Gingery ("Gingery") after a bench trial on the matter and entering judgment on all issues in favor of Gingery.

{¶2} The facts relevant to this appeal are as follows. On December 20, 2012, Educap filed a complaint against Gingery alleging that Gingery owed Educap $20,613.84 plus interest from the date of November 6, 2006, and late fees in the amount of $236.68.[1] (Doc. 1). Exhibits attached to the complaint alleged that Educap was owed this money by Gingery on a promissory note Gingery purportedly executed with Educap along with her father as co-signer, the now deceased Teddy Gingery ("Teddy"), to finance her education.

{¶3} On February 8, 2013, Gingery filed an answer denying that she owed Educap money, claiming that she never signed a promissory note with Educap and asserting a number of affirmative defenses. (Doc. 7).

{¶4} The case proceeded to a bench trial, which was held January 6, 2014. At trial, Educap called one witness, Susan Martin, a Legal Collections Coordinator for Educap who handled delinquent accounts. Martin identified several exhibits

---

[1] According to Gingery, the litigation had previously been filed in 2008. (Doc. 15).

that were ultimately entered into evidence, including a promissory note. (Plaintiff's Ex. 1). The promissory note listed Gingery as the "Student Borrower," and listed her father, Teddy, as "Co-Signer." (*Id*.) The note indicated that the total amount to be borrowed was $18,700, and of that borrowed amount, $9,000 was to be allocated to loan consolidation.[2] (*Id*.) The note contained Teddy's signature, and a signature Educap contended was also Gingery's. (*Id*.) Martin testified that she believed that Gingery's signature was genuine because, according to Martin, someone had called Educap to check the status of the loan twice and a note regarding those calls indicated that the person who called was Gingery. (Tr. at 32). Martin was not the person who took that call, however.

{¶5} Martin testified that the promissory note that was executed made Gingery and Teddy jointly and severally liable. (Tr. at 7). Martin testified that no payments were ever made on the note. (Tr. at 16).

{¶6} On cross-examination Martin testified that no one witnessed Gingery sign the promissory note and that it was not notarized. (Tr. at 41). Martin was also asked to compare Gingery's signature on the promissory note with another signature of Gingery's from 2004 (pre-dating the promissory note), which was on a different bank document. This 2004 document was introduced as Defense

---

[2] The loan amount was later increased to $19,821. (Plaintiff's Ex. 2).

Exhibit "A." Martin testified that the signatures "look different." (Tr. at 55). At the conclusion of Martin's testimony Educap rested its case.

{¶7} Gingery then took the stand as the sole witness in her case-in-chief. Gingery testified that she did not sign the promissory note, that she had never seen it before this case, that the signature on the note was not hers, and that the email listed on the promissory note under her "student borrower" section, tginger@columbus.rr.com, was not her email address. (Tr. at 62). Gingery testified that the signature on the 2004 document labeled Defendant's Exhibit A, which had been shown to Martin during her testimony, was Gingery's actual signature. (Tr. at 71). Gingery testified that she always used her middle initial when signing her name, which was not present in the promissory note, and that the "A" in "Abigail" in her own signature was more triangular in shape than the one used on the promissory note in question. (Tr. at 64). Gingery also testified that she never called Educap regarding the loan. (Tr. at 76).

{¶8} Moreover, Gingery testified that her father had told her he would be responsible for financing her college education, except for specific government Stafford loans that Gingery took out herself. (Tr. at 72-73). Gingery testified that she did not know if her father was taking out loans in order to accomplish the financing of her education, only that her father had told her that he would finance it. (Tr. at 73).

**{¶9}** Gingery did testify that she used $9,700 of the money from the Educap loan her father obtained for her to pay for her education expenses while she was at the University of Mount Union, though at the time she did not know where her father got the money. (Tr. at 72). Gingery also testified that she learned through the course of this case that her father used the remaining amount of the loan obtained from Educap to pay off his "Parent Plus" loan, which was a loan Teddy had taken out previously to finance Gingery's education on which Gingery was specifically not liable. (Tr. at 69). Exhibits supplied by Educap corroborated Gingery's testimony on this issue, that over half of the loan money from Educap was used by Teddy to pay off a prior loan of his.

**{¶10}** At the conclusion of Gingery's testimony, the defense rested its case. The parties then submitted written closing arguments to the court. (Docs. 19, 20).

**{¶11}** On February 14, 2014, the trial court issued its decision on the matter, which stated as follows.

> **Plaintiff's complaint alleges that the Defendant owes it $20,613.84 plus interest and late fees on an account. Defendant's answer to the complaint denied all of Plaintiff's claims and set forth several affirmative defenses to Plaintiff's claims.**
>
> **Whereupon, the Court heard testimony from Susan Martin the Legal Collection Coordinator at Plaintiff, Educap. She identified Plaintiff's exhibits 1-9 as business records related to the account at issue. It was established that the Defendant was indicated as the student borrower on the agreement (Plaintiff's exhibit 1) and her father, Teddy Gingery, was indicated as the co-signer on the loan. The amount of the loan, interest, etc. was**

**brought forth by this witness. She testified that the Educap records (processing records) indicate that on October 26, 2006 "Abigail called" presumably to check on the status of the loan. After the admission of Plaintiff's exhibits 1-9 the Plaintiff rested its case.**

**Whereupon, the Court heard testimony of the Defendant, Abigail Gingery, who stated she did not sign Plaintiff's exhibit 1 and never saw it before the litigation. She further testified that the e-mail address on the document is not hers. Defendant identified Defense exhibit A as a bank document with a signature she stated was her actual signature. She identified Defense exhibits A-D which were admitted into evidence before the defense rested.**

**Whereupon, the Court finds from the evidence, exhibits and the law presented to it, that the Plaintiff has failed to prove by a preponderance of the evidence that it is entitled to judgment for the disputed amounts against Defendant. Further, the Court finds that the evidence herein does not prove by a preponderance of the evidence that the note (Plaintiff's exhibit 1) was signed by the Defendant nor has the Court been provided any legal authority upon which to find the Defendant legally obligated on the note and account simply because she received some benefits from the proceeds.**

(Doc. 21). The court thus entered judgment in favor of Gingery on all issues in the matter.

{¶12} It is from this judgment that Educap appeals, asserting the following assignments of error for our review.

## ASSIGNMENT OF ERROR 1
**THE TRIAL COURT'S FINDING THAT GINGERY DID NOT SIGN THE PROMISSORY NOTE IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING THE BANK DOCUMENT AND PERMITTING LAY TESTIMONY OF THE SIGNATURE THEREON.**

*First Assignment of Error*

{¶13} In its first assignment of error, Educap contends that the trial court's decision was against the manifest weight of the evidence. Specifically, Educap contends that the trial court did not need proof of a signed agreement "based upon an account theory," that the trial court applied the wrong burden of proof on Gingery's "fraud defense," that Teddy was acting as Gingery's agent and thus Gingery should be bound by Teddy's agreement, and that Gingery subsequently ratified the note through acceptance of the benefits.

{¶14} In reviewing manifest weight of the evidence claims in civil cases, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17; *See also State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997).

{¶15} In defining weight of the evidence review in civil cases, the Ohio Supreme Court has held that,

**[w]eight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"**

(Emphasis sic.) *Eastley* at ¶ 12, citing *Thompkins* at 387.

{¶16} When determining a weight of the evidence argument, a court of appeals "must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. *See Thompkins* at 387 citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶17} In this case, evidence was presented that Gingery's name was on Educap's promissory note as the student borrower along with her father who was the co-signer on the note. Testimony was presented, albeit indirectly, that someone purporting to be Gingery called Educap to check the status of the loan. On the other hand, Gingery testified that she had no knowledge of the note in question, that her father took care of financing her education, that the signature on the promissory note was not hers, and that she never called Educap regarding the loan. Gingery also presented a signature on a bank document she stated was her

actual signature, which both she and Educap's witness testified looked different from Gingery's signature on the promissory note.

{¶18} The trial court found that based on the evidence Educap failed to establish that it was entitled to judgment against Gingery or that Gingery signed the note. The trial court also stated that Educap failed to provide any authority for which to find Gingery obligated on the note and account.

{¶19} On appeal, Educap makes a number of arguments to contend that the trial court's decision was against the weight of the evidence. Educap first contends that Gingery should have been held liable under an "Account Theory," which according to Educap does not require a signed agreement like the promissory note in order to be enforced. Under Educap's "Account Theory," "[a]n account rendered by a person to another not objected to by the latter within a reasonable time becomes an account stated." *Barclays Am./Commercial, Inc. v. ROYP Marketing Group, Inc.*, 61 Ohio App.3d 701, 708 (10th Dist.1988) citing *Nello L. Teer Co. v. Dickerson, Inc.*, 257 N.C. 522, 126 S.E.2d 500 (1962). An account stated is an agreed balance of accounts expressed or implied, after admission of certain sums due or an adjustment of the accounts between the parties. *Id.*

{¶20} As is plainly evident, the "Account Theory" that Educap proposes to apply in this case requires "an *agreed* balance of accounts [between the parties],

expressed or implied." (Emphasis added.) *Barclays* at 708. Here, there was testimony from Gingery that Gingery never "agreed" to any account between her and Educap, and that Gingery relied on the assumption that her father was financing her education. Thus if Gingery's testimony is believed, there was never any "agreed balance" between Gingery and Educap, rather merely an agreement between Teddy and Educap, and Educap's "Account Theory" argument fails. The trial court believed Gingery's testimony and found her credible, and there is *some* competent credible evidence to support Gingery's claims in the record. Thus we cannot find Educap's argument well-taken on this issue.

{¶21} Educap next argues that the trial court applied the wrong burden of proof in this case. Educap contends that it provided sufficient proof that Gingery signed the note, and therefore it became Gingery's burden to prove the affirmative defense of fraud regarding her signature. Despite Educap's arguments, the trial court found that Educap had not, in fact, provided sufficient proof that Gingery signed the note and thus the burden never switched to Gingery to prove her affirmative defense of fraud. There is evidence to support the trial court's decision in the record on this matter. Educap called no witnesses who purportedly saw Gingery sign the note. Educap did not require the note to be notarized. Educap did not call any witnesses who testified that whoever called to check the status of the loan was, in fact, Gingery. The signature on the promissory note, according to

the only two testifying witnesses, looked different from a signature Gingery testified was genuinely hers. Thus based on the evidence we cannot find that the factfinder "clearly lost its way" in finding that Educap failed to prove Gingery signed the promissory note. Therefore, Educap's argument on this issue is not well-taken.

{¶22} Educap next argues that Gingery should be held liable for her father's actions in signing the note because Teddy was acting as her "agent." However, Gingery's testimony indicated that she did not know how her father was financing her education, only that he was financing her education. Gingery testified that her father was "authorized" to handle the financial aspects of her schooling, but she did not testify that Teddy was authorized to *obligate her personally* for loans. In fact, she testified just the opposite, that her father would be the one taking care of the finances. Thus Educap did not establish that even if Teddy was acting in furtherance of Gingery's interests, that he was acting as her agent with the authority to obligate Gingery in such a manner.

{¶23} Finally, Educap argues that Gingery "ratified" the signature on the promissory note by accepting the benefits from the loan. Educap bases its argument on the premise that Gingery knew of the loan acquired by Teddy, and the fact that Gingery admittedly used $9,700 of the loan for her education. Again, Gingery specifically testified that she did not know about the loan. The trial court

found Gingery's testimony credible on that issue, and was in a far better position to judge her credibility than an appellate court. On the record before us, we cannot find that the factfinder clearly lost its way on this issue.

{¶24} Accordingly, Educap's first assignment of error is overruled.

*Second Assignment of Error*

{¶25} In Educap's second assignment of error, Educap argues that the trial court abused its discretion by admitting Defendant's Exhibit A, the Farmers Citizens Bank document containing Gingery's signature for the purposes of comparison, and permitting lay testimony as to the authenticity of the signature.

{¶26} Decisions regarding the admissibility of evidence are within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. *Wasinski v. PECO II, Inc.*, 3d Dist. Crawford No. 3-08-14, 2009-Ohio-2615, ¶18. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶27} On appeal, Educap contends that Defendant's Exhibit A, which contained Gingery's signature on a Farmers Citizens Bank document, was not properly authenticated as a business record. However, Defendant's Exhibit A was not admitted to show the contents of the document as a business record, but rather

merely for the signature, which was identified by Gingery as being her own. The contents of the document were otherwise irrelevant to the trial.

{¶28} As to identification and authentication of the signature on the Farmer's Bank document (Defendant's Exhibit A), Gingery identified the signature specifically as her own, and all that is required for authentication or identification "is * * * evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901. Gingery's testimony as to her own signature certainly meets that bar for admissibility. *See* Evid.R. 901(B)(1). Thus Educap's argument on this issue is not well-taken.

{¶29} Next, Educap argues that its own witness should not have been able to give testimony comparing Gingery's signature on the promissory note to the signature on Defendant's Exhibit A. Educap specifically objects to the following testimony, which occurred while Educap's witness, Martin, was on the stand.

> **Q[Defense Counsel to Martin on the stand]: Okay. Is that the same signature that's on Plaintiff's Exhibit 1?**
>
> **[Plaintiff's Counsel]: Objection.**
>
> **The Court: Yeah. I mean, I'm going to – she's not the – not a handwriting expert, but I'll let her – I – I don't know.**
>
> **Q: On Second thought –**
>
> **The Court: Your objection is that she's not qualified to –**
>
> **Ms. Gwin: Correct, Your Honor.**

**The Court:  Yeah.**

**Ms. Gwin:  That would be the province –**

**The Court:  I mean, anybody can look at them and see they're – they're not, you know, similar, but that do – do you have any idea whether someone – the same person signed these or not?**

**A[Martin]:  I – I don't know what this is.  I – I wouldn't know.**

**The Court:  Right.**

**Mr. Nee [Defense Counsel]:  Your Honor, If I may.**

**The Court:  Well, you – you may what?  What do you want to do?**

**Mr. Nee: Ex—Explain why I'm asking these ques –**

**The Court:  No, I don't want an explanation, I want you to ask the right questions.  You got her on the stand with a document she's never seen before and you're asking her to authenticate a signature, so I – you can't do that.**

**Mr. Nee:  I – I'm asking her if she recogni – I'm sorry, Your Honor.**

**Q:  Do You – do you recognize the signature on that document?**

**A:  I'm sorry.**

**The Court:  When you say recognize it, see, what does that mean?**

**Mr. Nee:  Well –**

**The Court:  'Cause, you know, she can't –**

**Mr. Nee:  The – the critical point in this is whether Abby signed it.**

**The Court: I know what your point is, but you can't do it with her 'cause she's not a handwriting expert, she's never seen her signature before, other than on her documents.**

**Mr. Nee: Okay.**

**The Court: You can say does this signature that purports to be Abigail Gingery's look like the signature on your documents?**

**Q: Miss Martin, does – does the signature on that document look like the signature on the promissory note?**

**The Court: No. Right?**

**A: To me they look different.**

**The Court: (inaudible) does that look like the one on your documents?**

**A: Uh-uh. No, sir.**

(Tr. at 53-55).

**{¶30}** Educap contends that prior testimony should not have been permissible under Evid.R. 901 to authenticate the Farmers Citizens Bank document. However, the trial court made it clear in the preceding portion that Martin could not, in fact, authenticate the document. Nevertheless, the trial court did allow Martin to be questioned briefly to compare the two signatures, which could be admissible as lay testimony pursuant to Evid.R. 701.[3] Regardless, as has

---

[3] Evidence Rule 701 reads, "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

been stated previously, the signature was later properly identified and authenticated by Gingery in her own testimony.

{¶31} However, even if Martin's testimony should not have been admitted, it was merely cumulative to the testimony presented by Gingery regarding her signature. Furthermore, the trier of fact in this case, which was the court, was free to look at the signatures just as Martin was asked to do and determine whether the signature on Educap's note was authentic in light of Gingery's testimony. Thus Educap's argument is not well-taken. Accordingly, Educap's second assignment of error is overruled.

{¶32} For the foregoing reasons Educap's assignments of error are overruled and the judgment of the Crawford County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**