OPINION
{¶ 1} Defendant-Appellant, Roger H. Meyer, appeals a judgment of the Shelby County Court of Common Pleas, granting summary judgment to Plaintiff-Appellee, Minster Farmers Cooperative Exchange Company, Inc ("Minster Farmers"). On appeal, Meyer asserts that the trial court erred in granting summary judgment to Minster Farmers, which included pre-judgment interest other than the statutory interest rate pursuant to R.C. 1343.03, and that the trial court erred in granting summary judgment, which compounded pre-judgment interest on a monthly basis. Finding that the trial court properly determined that a contract existed between the parties, but erred in determining the terms of that contract, the judgment of the trial court is affirmed in part and reversed in part.
 {¶ 2} In August of 1988, Meyer acquired one share of common stock in Minster Farmers, which is a commercial farm elevator. Since acquiring his one share in 1988, Meyer has maintained a commercial account with Minster Farmers, purchasing feed, fertilizer, fuel and other miscellaneous farm supplies. Each month, Minster Farmers sent Meyer a monthly statement showing what he had purchased. Meyer does not dispute that he purchased the various items stated on the account. Additionally, each monthly statement provided that a finance charge would be assessed on unpaid balances.
 {¶ 3} In January of 1998, Minster Farmers increased its finance charges from one and one half a percent to two percent per month. While Minster Farmers claims that it had sent a letter informing its customers of these changes, Meyer denies receiving a copy of that letter. Nevertheless, Meyer admits that each monthly statement included the following statement regarding finance charges: "2% FINANCE CHARGE PER MONTH AFTER 30 DAYS. (24% ANNUAL)."
 {¶ 4} In the fall of 2001, Meyer complained to Minster Farmers' employees Brian Heitkamp and Neal Wiedeman about the interest that he was being charged on the invoices. Additionally, in May of 2003, Meyer wrote a letter to Minster Farmers' attorney Douglas Jauert. In his letter, Meyer stated that the amount claimed to be owed by Minster Farmers is not correct, because Meyer's claimed that Minster Farmers had been charging him "as high as 30% interest."
 {¶ 5} During this time, Meyer made payments on his Minster Farmers' account; however, in mid-2001, Meyer stopped making regular payments on his account. In January of 2002, Meyer did make a payment on his account; however, no other payments have been made on the account since that time.
 {¶ 6} In February of 2005, Minster Farmers filed a complaint against Meyer seeking fifty-one thousand three hundred seventy-four dollars and eighty-nine cents for the unpaid balance on his account. Subsequently, Meyer filed a counterclaim as well as a motion for summary judgment on his counterclaim. In August of 2005, Minster Farmers filed its own motion for summary judgment. Subsequently, Meyer filed a motion in opposition to Minster Farmers motion for summary judgment.
 {¶ 7} In October of 2005, the trial court granted Minster Farmers motion for summary judgment. Specifically, the trial court found that Meyer's account with Minster Farmers involved transactions between merchants pursuant to R.C. 1302.01(A)(5). Therefore, the Ohio's version of the Uniform Commercial Code ("U.C.C.") governed those transactions. Finding that the finance terms of two percent per month on any unpaid balance, which was found on the monthly statements, constituted a contract, to which Meyer had never objected, and that R.C. 1343.03(A)(1) was inapplicable to the this case, the trial court awarded summary judgment in favor of Minster Farmers in the sum of fifty-five thousand five hundred and eighty-three dollars.
 {¶ 8} Subsequently, the judgment entry granting summary judgment was rendered final upon the voluntary dismissal of Meyer's counterclaim. It is from this judgment Meyer appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO MINSTERFARMERS THAT INCLUDED PRE-JUDGMENT INTEREST OTHER THAN THESTATUTORY RATE SET FORTH IN R.C. § 1343.03.
 Assignment of Error No. II THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO MINSTERFARMERS THAT INCLUDED PRE-JUDGMENT INTEREST THAT IS COMPOUDED ONA MONTHLY BASIS.
 {¶ 9} In the first assignment of error, Meyer asserts that the trial court erred in granting summary judgment to Minster Farmers that included interest other than the statutory rate of interest set forth in R.C. 1343.03. In the second assignment of error, Meyer asserts that the trial court erred in granting summary judgment to Minster Farmers that included compounding interest. Because these two assignments of error are interrelated, we will address them together.
 {¶ 10} An appellate court reviews a summary judgment order de novo. Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. DaytonHeidelberg Distr. Co., 148 Ohio App.3d 596, 2002-Ohio-3932, at ¶25, citing State ex rel. Cassels v. Dayton City School Dist. Bd.Of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) that there is no genuine issue as to any material fact; (2) that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Horton v.Harwick Chemical Corp., 73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 358-59, 1992-Ohio-95.
 {¶ 11} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. Stateex rel. Burnes v. Athens City Clerk of Courts,83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also, Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 {¶ 12} Meyer contends that the trial court erred in granting Minster Farmers summary judgment, based upon the amount of interest and the compounding manner in which such interest is being computed. Essentially, Meyer asserts the trial court erred in applying the U.C.C and granting summary judgment for an interest rate over the statutory interest rate of ten percent pursuant to R.C. 1343.03. Furthermore, Meyer argues that the trial court erred in allowing the judgment amount to include interest that was computed in a compounding manner.
 {¶ 13} In the case sub judice, it is clear that parties are merchants pursuant to R.C. 1302.01(A)(5). This Court has previously held that finance charges on a monthly statement between merchants constitute a contract between the parties.Hamilton Farm Bureau Cooperative v. Ridgway Hatcheries, 3d Dist. No. 9-03-45, 2004-Ohio-809, ¶ 18. In Hamilton, the plaintiff sought recovery of approximately seventeen thousand dollars for an unpaid account balance, where the defendant was objecting to finance charges. Id. at ¶¶ 1-7. Additionally, both parties were merchants, and the defendant had written a letter objecting to the plaintiff's interest being charges. Id. at ¶¶ 4, 15. In Hamilton, applying the U.C.C., this Court held the following:
In the case sub judice, Ridgway Hatcheries continued to pay onthe monthly statements, at least as to the principal, andcontinued to order goods from Hamilton Farm despite the inclusionof the added term for finance charges. Ridgway Hatcheries failedto make any objections as to the term for finance charges untilapproximately a year after the term appeared on the monthlystatements, and then only objected after receiving writtencorrespondence from Hamilton Farm attempting to recover thebalance due on the account. Such inaction by Ridgway Hatcheriesconstitutes an acceptance of the added term of finance charges tothe contract between the parties and also constitutes anagreement between the parties as to the amount of the accountstated. Ridgway Hatcheries was under a duty to examine itsmonthly statements for incorrect accounting and its lack eitherto do so or to object to such is acquiescence on the part ofRidgway Hatcheries to the new terms of the contract.
Id. at ¶ 18. Having found that a contract existed based upon the terms of the invoice, this Court affirmed the trial court's decision.
 {¶ 14} Here, it is clear that Meyer received invoices, which included the "2% FINANCE CHARGE PER MONTH AFTER 30 DAYS. (24% ANNUAL)" language, each month for approximately three years prior to objecting to the interest being charged. Thus, followingHamilton, the U.C.C. is applicable herein and a contract between the parties existed as to the above terms.
 {¶ 15} Meyer goes on to assert that under R.C. 1343.03(A) andChampaign Landmark, Inc. v. McCullough (Nov. 27, 1990), 3d Dist. No. 6-89-17, the trial court erred in allowing an interest rate greater than the statutory interest rate. R.C. 1343.03(A) provides the following:
In cases other than those provided for in sections 1343.01 and1343.02 of the Revised Code, when money becomes due and payableupon any bond, bill, note, or other instrument of writing, uponany book account, upon any settlement between parties, upon allverbal contracts entered into, and upon all judgments, decrees,and orders of any judicial tribunal for the payment of moneyarising out of tortious conduct or a contract or othertransaction, the creditor is entitled to interest at the rate perannum determined pursuant to section 5703.47 of the Revised Code,unless a written contract provides a different rate of interestin relation to the money that becomes due and payable, in whichcase the creditor is entitled to interest at the rate provided inthat contract. Notification of the interest rate per annum shallbe provided pursuant to sections 319.19, 1901.313, 1907.202,2303.25, and 5703.47 of the Revised Code.
 {¶ 16} In Champaign Landmark, this Court adopted the trial court's opinion as its own. Champaign Landmark, supra. Based upon similar facts, this Court applied R.C. 1343.03(A) and found that a written contract existed. Id. The Champaign Landmark
case also involved a finance charge whereby the terms were 2% monthly, 24% annually, and the plaintiff argued that it could charge compounding interest. Id. In Champaign Landmark, we affirmed the trial court's finding that "plaintiff has computed its service charge on its unpaid balance including prior service charges. This compounds interest and will amount to more than a 24% annual percentage rate on the principal balance which the Court finds was the contemplated rate." Id. Thus, in affirming the trial court's decision, this Court disallowed the plaintiff in Champaign Landmark to compute interest on a compounding basis, where the terms of the contract stated that a 24% annual percentage rate would apply.
 {¶ 17} Thus, under Champaign Landmark and R.C. 1343.03(A), the terms of the invoice also establish a written contract. As noted above, the terms of the contract, which appears on every invoice, the letter Minster Farmers claims it sent and all Minster Farmers' pleadings, includes the 2% per month and 24% annual language. Thus, following the rationale of ChampaignLandmark, we find that the trial court's allowance of compounding interest to be charged under the terms of this contract is clearly error.
 {¶ 18} Thus, we affirm the trial court's finding that a contract existed between two merchants under the U.C.C., and find that the trial court did not err in applying an interest rate above the statutory rate provided in R.C. 1343.03(A). Accordingly, assignment of error one is overruled. However, the case must be remanded to the trial court for a proper judgment determination based upon an interest rate of 24% per year. As such, assignment of error two is sustained.
 {¶ 19} Having found no error prejudicial to appellant in the first assignment of error, but having found error prejudicial to appellant in the second assignment of error, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part.
 Shaw and Cupp, JJ., concur.