OPINION *Page 2 
{¶ 1} Defendant-Appellant, Roger H. Meyer, appeals the judgment of the Shelby County Court of Common Pleas granting summary judgment in favor of Minster Farmers Cooperative Exchange Co. for $15,000. On appeal, Meyer argues that the trial court erred by allowing the calculation of interest on his debt to begin on a date other than what the trial court ordered in its own judgment; that the trial court erred in awarding a $15,000 judgment against him; and, that the trial court erred by granting his trial counsel's motion to withdraw. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In August 1988, Meyer opened an account with Minster Farmers Cooperative Exchange ("Farmers") to purchase feed, fertilizer, and chemicals. From the beginning of the account, a finance charge was assessed on each monthly balance.
 {¶ 3} In January 1998, Farmers raised the monthly finance charge from 1.5 percent to two percent, which was placed on all monthly invoices sent to Meyer. Meyer raised complaints to various individuals at Farmers in regards to the monthly finance charge, as he claimed he was never notified of any increase and should not be responsible for the increase. Subsequently, Meyer discontinued making payments on the account. *Page 3 
 {¶ 4} In February 2005, Farmers filed a complaint against Meyer for $51,374.89 plus finance charges due on his account. Thereafter, both parties filed motions for summary judgment.
 {¶ 5} In October 2005, the trial court granted Farmers motion for summary judgment, finding that Ohio's version of the Uniform Commercial Code ("UCC") governed the transaction; that the monthly statements providing for a two percent interest rate constituted an enforceable contract, and, therefore, the statutory interest rate provided by R.C. 1343.03(A) was inapplicable; and, that the judgment should be computed by compounding interest monthly.
 {¶ 6} In April 2006, this Court affirmed in part, and reversed in part, the judgment of the trial court in Minster Farmers CooperativeExchange Co., Inc. v. Meyer, 3d Dist. No. 17-05-32, 2006-Ohio-1886, finding that the two percent interest rate provided in the invoices constituted an enforceable contract, but that interest should not be compounded. Subsequently, Meyer and Farmers appealed and cross-appealed our decision to the Supreme Court.
 {¶ 7} In March 2008, the Supreme Court reversed the judgment of this Court in Minster Farmers Cooperative Exchange Co., Inc. v. Meyer v.Dues, 117 Ohio St.3d 459, 2008-Ohio-1259, finding that the monthly invoices detailing the interest rate did not constitute an enforceable contract, and, therefore, that Farmers' interest rates exceeded the statutory maximum pursuant to *Page 4 
R.C. 1343.03(A) and 5703.47. Consequently, the Court remanded the case to the trial court to determine the correct amount due on the account, with interest to be calculated pursuant to R.C. 5703.47.
 {¶ 8} In June 2008, after briefing from both parties, the trial court found that the opening date of the account in August 1988, and not the last date of a zero account balance, as contended by Farmers, was the proper date to begin recalculating the account balance using the proper rate of interest, as provided by R.C. 5703.47.
 {¶ 9} In August 2008, Meyer's trial counsel filed a motion to withdraw due to Meyer's lack of cooperation and non-payment of legal fees.
 {¶ 10} In September 2008, the trial court held a hearing on the motion to withdraw and, subsequently, granted the motion.
 {¶ 11} In October 2008, Farmers filed a motion for summary judgment on Meyer's account, claiming an amount due of $15,868. Attached to the motion was the affidavit of Daniel Thompson, a proposed joint expert witness of both Meyer and Farmers. In his affidavit, Thompson stated that he has been employed as a certified public accountant ("CPA") since 1979; that he holds a Juris Doctor Degree and is a member of the Ohio Bar; that he regularly prepares loan amortization schedules and performs financial analyses and time value of money and interest calculations; that he was hired by counsel for Farmers and Meyer to *Page 5 
be the expert witness of both parties to calculate the amount due on Meyer's account with Farmers; that, in determining the amount due on the account, he started with the opening of the account in 1988; that he computed simple interest at a rate provided by R.C. 5703.47; that he reviewed Meyer's account statements for the period of January 1, 1995, through December 1, 1998, and deducted $669.17 from Meyer's account balance for excess finance charges he paid pursuant to the Supreme Court's decision; that, after the credit, Meyer's account balance as of December 1, 1998, was $9,730.83; that, for the years 1989, 1990, and 1991, he relied on the assumption provided by Farmers that Meyer made no purchases during this period, and, as a consequence, incurred no excessive finance charges; that he assumed all purchases made in 1988 were paid for in that calendar year, also resulting in no improper finance charges; that he did not review any account statements for the years 1992, 1993, or 1994, when Meyer made purchases, as the calculations for the years 1992, 1993, and 1994 would result in additional finance charges being assessed to Meyer which are not reflected in his December 1, 1998 balance, and, this increase in his account, which would be proper under the Supreme Court's opinion, would be approximately equal to any credit Meyer may be due for any improperly assessed finance charges to his account for 1992, 1993, and 1994; and, that based upon calculations from monthly statements on his account through December 31, 2005, and the fact that he had no *Page 6 
account activity from January 1, 2006, to the present, the total account balance owed Farmers is $15,868. Attached to Thompson's affidavit was a detailed balance sheet of all calculations up to August 31, 2008, starting with the beginning balance of $9,730.83 on December 1, 1998.
 {¶ 12} In November 2008, Meyer filed a pro se "motion to strike" Farmers' summary judgment motion, asserting that Farmers owed him over $40,000 from interest overcharges, product overcharges, and a loss on his corn crop, none of which were properly deducted from his account balance. The claim that Meyer asserted for his corn crop loss related to a separate, unconsolidated case that was pending at the time of this motion. Furthermore, Meyer contended that the product overcharges related to an invoice from February 2001, in which he claimed that Farmers agreed to sell him fertilizer at $128 per ton, but instead billed him at rates of $135 and $145 per ton. In his motion to strike, Meyer did not submit any evidence to prove what he claimed to be the proper account balance, other than his own unsworn handwritten notes and old sales invoices.
 {¶ 13} Subsequently, Farmers filed a response to Meyer's motion to strike. In its motion, Farmers stated that Meyer's claims relating to the incorrect billing in February 2001 were accurate; that, had the fertilizer been billed at $128 per ton, Meyer would entitled to a reduction in principle of $577.72; that, to avoid additional concerns about excessive interest that Meyer incurred as a result of the *Page 7 
incorrect billing, Farmers would further reduce the account by $290.28; and, that the amount now claimed owed on summary judgment is $15,000.
 {¶ 14} Thereafter, the trial court granted Farmers' motion for summary judgment, awarding it $15,000 on Meyer's account. In its order, the trial court stated the following:
 On October 13, 2005, this Court * * * determined judgment in favor of Plaintiff and against Defendant. That decision adjudicated the principle amount owed plus interest. * * *
 The Ohio Supreme Court determined that the interest rate charged by the Plaintiff was improper and remanded to the Trial Court. The Supreme Court did not determine that the principle amount charged by Plaintiff and adjudicated was improper. Upon remand, the sole issue for this Court was to determine the date from which to calculate a proper interest charge and the amount owed using the proper rate of interest.
 This Court, on June 10, 2008, issued its Decision/Order determining that the interest needed to be recalculated from the date of the original opening of the account. * * *
 Plaintiff has now submitted to this Court substantial evidence, not contradicted by the Defendant, as to the amount owed on the account using the proper interest calculation. The only evidence submitted to this Court on that issue is that the current balance owed as of August 31, 2008 is Fifteen Thousand Eight Hundred and Sixty-Eight Dollars ($15,868.00).
 Even though the evidence shows that the Plaintiff is owed as of August 31, 2008, the amount of Fifteen Thousand Eight Hundred and Sixty-Eight Dollars ($15,868.00), Plaintiff in its memorandum indicated that it is prepared to accept a judgment in the amount of Fifteen Thousand Dollars ($15,000) * * *. *Page 8 
 Accordingly, based upon the Motion for Summary Judgment and the affidavits and exhibits submitted by Plaintiff, this Court finds that there is no genuine issue of material fact and that Plaintiff is entitled to a judgment as a matter of law in the amount of Fifteen Thousand Dollars ($15,000) as of August 31, 2008, to bear interest from that date according to law.
(Nov. 2008 Decision/Order on Plaintiff's Motion for Summary Judgment, p. 2).
 {¶ 15} It is from this judgment that Meyer appeals, presenting the following pro se assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED WHEN IT VIOLATED ITS OWN DECISION/ORDER ENTERED JUNE 10, 2008, WHEN IT ALLOWED THE PLAINTIFF TO RECALCULATE INTEREST FROM A DATE OTHER THAN THE ORIGINAL OPENING OF THE BOOK ACCOUNT.
 Assignment of Error No. II THE TRIAL COURT ERRED WHEN IT ALLOWED BRYAN NIEMEYER TO WITHDRAW AS COUNSIL [SIC] ON COUNCILS [SIC] OWN MOTION AND NOT PROVIDED [SIC] DEFENDANT/APPELLANT HIS CASE SO HE COULD PROPERLY ADJUDICATE HIS CASE.
 Assignment of Error No. III THE TRIAL COURT ERRED WHEN ITS ORDER STATES THAT THE ORIGINAL PRINCIPLE [SIC] AMOUNT OWED WAS SET ON OCT. 13, 2005, BY THE HON. JOHN D. SCHMIDT. BY ADMISSION THIS COURT HAS REDUCED THE PRINCIPLE [SIC] TO $15,866.00. *Page 9 
 Assignment of Error No. IV THE TRIAL COURT ERRED WHEN IT AWARDED JUDGMENT IN FAVOR OF THE PLAINTIFF/APPELLEE IN THE SUM OF $15,000.00.
 {¶ 16} Due to the nature of Meyer's arguments, we elect to address assignments of error one, three, and four together.
 Assignments of Error Nos. I, III, and IV {¶ 17} In his first assignment of error, Meyer argues that the trial court erred by allowing the expert to calculate the amount due on his account from a date other than the date of the opening of the account, as the trial court ordered. Specifically, he contends that the expert recalculated the interest on his account starting from December 31, 1999, when it should have been recalculated starting from April 1973.
 {¶ 18} In his fourth assignment of error, Meyer argues that the trial court erred in awarding Farmers a judgment of $15,000 on his account. Specifically, he asserts that the amount due on the account cannot be correct because his overpayment of interest was never deducted from the account balance, and because the recalculation of interest on the account was not done starting with the opening of the account. *Page 10 
 {¶ 19} We further note that the arguments asserted in Meyer's third assignment of error are exactly the same arguments he asserts in his first and fourth assignments of error.
 {¶ 20} An appellate court reviews a trial court's summary judgment order de novo. Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination.Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co.,148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25, citing State ex rel. Cassels v. DaytonCity School Dist. Bd. of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ. R. 56(C); Horton v. Harwick Chemical Corp.,73 Ohio St.3d 679, 686-687, 1995-Ohio-286. Furthermore, if any doubts exist on an issue, it must be resolved in favor of the nonmoving party.Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95.
 {¶ 21} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of *Page 11 
material fact. Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support its argument. Id. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. Id.; Civ. R. 56(E).
 {¶ 22} A party's failure to raise an issue in response to an adverse party's motion for summary judgment waives that issue for purposes of an appeal. Grieshop v. Hoyng, 3d Dist. No. 10-06-27, 2007-Ohio-2861, ¶ 36, citing Hood v. Rose, 153 Ohio App.3d 199, 2003-Ohio-3268, ¶¶ 9-11.
 {¶ 23} In the case at bar, Farmers filed its motion for summary judgment with the attached affidavit of the parties' joint expert, who asserted that the amount due on Meyer's account was $15,868. Meyer's only response to the motion was a motion to strike, which asserted that he was charged an excessive price for fertilizer on February 28, 2001, and that lost income due to Farmers shipment of the wrong fertilizer should offset his account. Nowhere in his motion to strike did Meyer assert that the expert, Daniel Thompson, did not recalculate his account starting with the proper date. Accordingly, Meyer waived his ability to raise this error on appeal. *Page 12 
 {¶ 24} However, we note that, even though Meyer waived this error, the expert properly performed the recalculation from the starting date of the account in August 1988.[1] Specifically, Thompson's affidavit states that he began with the account's starting date in 1988; that he assumed any purchases made in 1988 were paid for in that year, resulting in no improper interest charges; that, for the years 1989, 1990, and 1991, Meyer made no purchases on the account, thereby resulting in no interest charges; that no interest charges were calculated for the years 1992, 1993, and 1994, because any charges would be offset by any credit he would be due for interest overcharges in those same years; that from 1995 through 1998, he credited Meyer's account for $669.17 from interest overcharges occurring during that period; that on December 1, 1998, his account balance was $9,730.83; and, that he calculated the amount due on the account from that date forward starting with that figure.
 {¶ 25} Furthermore, Meyer contends that the trial court erred in awarding Farmers a $15,000 judgment on his account because Thompson's calculation of the amount due on the account did not properly reflect the credit that should have been given him for excess interest charges, as required by the Supreme Court. *Page 13 
However, in Thompson's affidavit, he stated that, in computing Meyer's account balance, he credited his account $669.17 for excess interest paid from 1995 through 1998; that he did not add any interest charges from 1992 through 1994 because they were offset by the amount of credit he was due for interest overpayments; and, that he computed simple interest on the account with the rate provided by R.C. 5703.47, as instructed by the Supreme Court. Additionally, even if Meyer disagreed with Thompson's calculations, he submitted no alternative estimates as to the amount that should be due on the account, and he disputed the amount due solely based on a claim from a separate unconsolidated case.
 {¶ 26} We do note, however, that Meyer disputed the account balance in his motion to strike based on a claim that Farmers overcharged him for fertilizer, but Famers, in its response motion, agreed to reduce its claim on the account for the amount of the mistake Meyer claimed it made, along with a further reduction for excess interest incurred on the account as a result of the improper charge.
 {¶ 27} As such, Meyer submitted no evidence to establish that a genuine triable issue existed on the question of whether the account balance was an amount other than $15,000.
 {¶ 28} Accordingly, Meyer's first, third, and fourth assignments of error are overruled. *Page 14 
 Assignment of Error No. II {¶ 29} In his second assignment of error, Meyer contends that the trial court erred by permitting his trial counsel to withdraw on his own motion. Specifically, Meyer argues that his trial counsel failed to provide him with his case file upon withdrawal, and, as a result, he was unable to properly adjudicate his case.
 {¶ 30} A trial court's decision to grant or deny a motion to withdraw as trial counsel will not be overturned absent an abuse of discretion.State v. Deckard, 3d Dist. No. 13-91-11, 1992 WL 19350, citing State v.Deal (1969), 17 Ohio St.2d 17. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 31} Here, Meyer's trial counsel filed a motion to withdraw, citing Meyer's failure to cooperate with him on the case and nonpayment and legal fees. The trial court held a hearing on the motion; however, Meyer failed to provide us with transcripts of the hearing, thereby neglecting his duty to ensure that we have the record necessary to evaluate the assignment of error. App. R. 9(B); State v. Williams, 73 Ohio St.3d 153,160-61, 1995-Ohio-275. Without a record of the hearing, we must presume that the trial court conducted a proper inquiry into the *Page 15 
withdrawal motion, including whether Meyer's case would be prejudiced should his counsel be permitted to withdraw. App. R. 9(B); State v.West, 3d Dist. No. 2-06-04, 2006-Ohio-5834, ¶ 53, citing State v.Estrada (1998), 126 Ohio App.3d 553, 556. Additionally, without transcripts of the proceeding, we have no record of Meyer objecting to his trial counsel's withdrawal.
 {¶ 32} Accordingly, Meyer's second assignment of error is overruled.
 {¶ 33} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 PRESTON, P.J. and WILLAMOWSKI, J., concur.
[1] We note that, in his brief and reply brief, Meyer contends that the opening of the account occurred in April 1973. However, our review of the record indicates that, throughout the lower court filings, and specifically in his brief to the trial court regarding the proper calculation of interest owed, Meyer admitted that the account was opened in 1988; that the trial court concluded that the account opened in 1988; and, that until his appeal, Meyer never argued that the account was open at a date prior to 1988. As such, Meyer cannot now claim an error he never raised at the trial court, let alone an error which he invited.State v. Campbell, 90 Ohio St.3d 320, 324, 2000-Ohio-183;Hoyng, 2007-Ohio-2861, at ¶ 36. *Page 1